PRESENT: All the Justices

ORTHOPEDIC & SPORTS PHYSICAL
THERAPY ASSOCIATES, INC., ET AL.

OPINION BY
v.  Record No. 110849        JUSTICE CLEO E. POWELL
April 20, 2012

SUMMIT GROUP PROPERTIES, LLC

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
J. Howe Brown, Jr., Judge Designate

In this appeal, Orthopedic & Sports Physical Therapy Associates, Inc. ("OSPTA") argues that the trial court erred in granting Instruction 15, offered by Summit Group Properties, LLC ("Summit"), because it misstated the law by instructing the jury that a limited liability company ("LLC") could not be liable for any fraudulent activity unless the fraud was approved by the members of the LLC.  We agree with OSPTA that Instruction 15 was misleading because it was not a complete statement of the law, and hold that the trial court erred in giving the instruction.

I. FACTS AND PROCEEDINGS

Brian P. D'Orazio, Barbara D. Ehman, and Marshall A. Rennie were partners in OSPTA.  Together, they approached Doctors Kurt Larson, Raymond Chung, and Raymond Kirchmier of Orthopedic Specialty Clinic ("OSC") and five other individuals from Cardiology Associates of Fredericksburg ("CAF") to form Massaponax Medical Properties, L.L.C. ("MMP").  D'Orazio was the first president of MMP and Dr. Larson was its first treasurer. MMP intended to purchase land in the Massaponax area of

Spotsylvania County, build a medical office building, and then sell the finished property to a third party with OSPTA, OSC, and CAF as tenants.

On October 18, 2007, the five members of CAF submitted an offer to MMP to purchase the property. After that offer was submitted, the three members of OSC approached CAF and asked to join them in purchasing the property. The eight then formed Summit on December 28, 2007, to purchase and operate the building.

OSPTA executed a lease with MMP on January 31, 2008. OSC and CAF entered into identical leases. Summit eventually purchased the building and assumed the leases from MMP in September of 2008.

Prior to opening the Massaponax office building, OSC was the largest referral source for OSPTA as OSC did not have its own physical therapy practice. Ehman testified that she spoke with the OSC doctors about their plans and the needs of OSC upon expansion to the Massaponax office. She also admitted that OSPTA did not discuss any referral/rent arrangement with OSC. However, because OSC did not have physical therapists, OSPTA made its decision to enter into a long term lease based on its assumption that it would continue to receive referrals from OSC.

During 2007, Dr. Larson decided that OSC would begin offering physical therapy at the new Massaponax office. To do

2

this, OSC hired two physical therapists from OSPTA in 2007.[1]

Ehman and D'Orazio contend that Dr. Larson made this decision on

behalf of OSC.  The opening of OSC's Massaponax office had a

significant, negative effect on OSPTA's practice.  On August 15,

2009, OSPTA vacated its office space, thereby breaching its

lease.

Summit sued OSPTA and its partners for breach of the lease

and damages.  OSPTA filed a counterclaim in which it alleged

fraud in the inducement and damages.  At trial, OSPTA offered

the following instruction that the trial court gave as

Instruction 13:

> An act of a member, including the signing of
> an instrument in the limited liability company
> name, for apparently carrying on in the ordinary
> course the limited liability company business or
> business of the kind carried on by the limited
> liability company, binds the limited liability
> company, unless the member had no authority to
> act for the limited liability company in the
> particular matter and the person with whom the
> member was dealing knew or had notice that the
> member lacked authority.

Summit offered an instruction informing the jury that

to find it guilty of fraud, the jury was required to find

that fraudulent activity was authorized by the members of

the LLC.  OSPTA objected and argued that Summit's instruction

---

[1] Although OSC surreptitiously hired two physical therapists from OSPTA in 2007, OSC did not open its physical therapy practice for some time.  This advance hiring was done to allow the employees' non-compete agreements to expire prior to the opening of OSC's Massaponax office.

was an incorrect statement of the law because it omitted the "ordinary course of business" requirement. The court overruled the objection and gave the instruction as Instruction 15.

OSPTA argued that Summit's ordinary course of business was purchasing and leasing the Massaponax office building and that members of OSC who were also members of Summit concealed information and made material misrepresentations to induce OSPTA to sign the lease. OSPTA contended that by giving the jury a proper, amended instruction, the jury would be tasked with deciding whether OSC's actions were within the ordinary course of Summit's business.

Summit's theory of the case was that to the extent that misrepresentation and/or concealment occurred, it took place before Summit was formed, certainly before it assumed the leases, and was done in the course of OSC's business.

After the case was given to the jury, the jury returned with a question: "In regard to Instruction 15, 'Do the actions or non-actions of a minority portion of the group represent authority of the group.'" The trial court responded: "You must decide the case based upon the instructions and the evidence."

The jury returned a verdict in favor of Summit against OSPTA in the amount of $187,000 plus interest. It found for Summit on OSPTA's counterclaim.

4

In its post-trial motions, OSPTA argued that Instruction 15 conveyed to the jury that Summit could not be held liable unless all of the members of Summit approved the fraud and was therefore both legally and semantically wrong. OSPTA argued that because of this instruction, Summit erroneously argued to the jury that a majority of the members of Summit had to authorize the fraudulent activity. The trial court denied these motions. This appeal follows.

## II. ANALYSIS

When we consider the propriety of giving an instruction to a jury,

> our responsibility is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises. [A] litigant is entitled to jury instructions supporting his or her theory of the case if sufficient evidence is introduced to support that theory and if the instructions correctly state the law. The evidence introduced in support of a requested instruction must amount to more than a scintilla.

Bennett v. Sage Payment Solutions, Inc., 282 Va. 49, 55, 710 S.E.2d 736, 740 (2011) (quoting Williams v. Cong Le, 276 Va. 161, 166, 662 S.E.2d 73, 76 (2008)). "We read the granted jury instructions together and consider them as a whole. The determination whether a jury instruction accurately states the relevant law is a question of law that we review de novo." Hawthorne v. VanMarter, 279 Va. 566, 586, 692 S.E.2d 226, 238 (2010) (citations omitted).

5

OSPTA asserts that Code § 13.1-1021.1(A)(2) clearly indicates that the actions of one member of an LLC may bind the entire LLC when the actor was "carrying on in the ordinary course [of] the limited liability company business." OSPTA contends that more than a scintilla of evidence supported its argument that the lies and misrepresentations were made by members of Summit to induce OSPTA to sign a long term lease and that the leasing and management of the building is within the business of Summit. OSPTA points to the fact that Summit was formed on December 28, 2007, while the lease was not signed until January 31, 2008. OSPTA argues that the full extent of OSC's plan was hidden from it long enough for Summit to be approved for financing to close on the purchase of the building from MMP. OSPTA contends that the fact finder must determine the nature of both the business and the conduct before it can determine whether ratification by the members was necessary. OSPTA asserts that the jury was clearly confused by the instruction because, after two hours of deliberation, it asked: "In regard to Instruction 15, 'Do the actions or non-actions of a minority portion of the group represent the authority of the group?' "

Summit's theory of the case is that the lies and misrepresentations pertained to whether OSC would offer physical therapy as part of OSC's business. Since physical therapy is

6

not part of Summit's business, it argues that the acts in question were not within the scope of Summit's business. Summit contends that this theory is further supported by the facts that Summit was not a party to the lease, OSPTA intended to enter the lease long before Summit existed, and the lease predates Summit owning the property. As such, the members of Summit would have had to authorize the fraudulent actions for Summit to be liable.

Instruction 13, which was offered by OSPTA, was based on Code § 13.1-1021.1(A)(2), which provides in relevant part that

> [a]n act of a member . . . for apparently carrying on in the ordinary course the limited liability company business or business of the kind carried on by the limited liability company, binds the limited liability company, unless the member had no authority to act for the limited liability company in the particular matter and the person with whom the member was dealing knew or had notice that the member lacked authority.

Thus, Instruction 13 accurately stated the law applicable to the circumstance when a fraudulent act was committed in the ordinary course of an LLC's business.

The contested Instruction 15 stated:

> The Plaintiff Summit Group Properties, LLC, is a limited liability company. In order for you to find that Summit Group Properties, LLC, is guilty of fraud, you must find that the fraudulent activity was authorized by the members of Summit Group Properties, LLC.

According to Summit, this instruction is based upon Code § 13.1-1021.1(A)(3), which states that any act of a member "which is not apparently for carrying on in the ordinary course the

7

limited liability company business or business of the kind carried on by the limited liability company binds the limited liability company only if the act was authorized by the other members in accordance with § 13.1-1022." The problem with Instruction 15, however, is that it omits the language "not apparently for carrying on in the ordinary course" of the LLC's business.

"[A] litigant is entitled to jury instructions supporting his or her theory of the case if sufficient evidence is introduced to support that theory and if the instructions correctly state the law. The evidence introduced in support of a requested instruction must amount to more than a scintilla." Williams v. Cong Le, 276 Va. 161, 166, 662 S.E.2d 73, 76 (2008) (citation and internal quotation marks omitted).

Depending on the nature of the act at issue in a particular case, i.e., whether it was one conducted in the "ordinary course" of the LLC's business, an instruction based on Code § 13.1-1021.1(A)(2) (in the ordinary course of) or Code § 13.1-1021.1(A)(3) (not in the ordinary course of) may be appropriate. In this case, the alleged fraudulent acts were lies and omissions by OSC, whose members are three of the eight members of Summit. Therefore, the dispositive question in this case is whether the actions by OSC's members were in the ordinary course of Summit's business. Instruction 15 lacked the "not apparently

8

for carrying on in the ordinary course of business" language that would have modeled it after Code § 13.1-1021.1(A)(3). As such, it was error to give this instruction.

Summit further asserts that even if it was error for Instruction 15 to have been given, any error was harmless.[2] We disagree with this contention.

> This Court has often found that where an erroneous instruction conflicts with an instruction that correctly states the law, the verdict must be set aside because it is impossible to determine which instruction was the basis for the jury's decision.

> Nevertheless, a jury verdict based on an erroneous instruction need not be set aside if it is clear that the jury was not misled.

Riverside Hosp., Inc. v. Johnson, 272 Va. 518, 536-37, 636 S.E.2d 416, 426 (2006) (citations omitted).

Here, the jury asked: "In regard to Instruction 15, 'Do the actions or non-actions of a minority portion of the group

---

[2] In part, Summit argues that Instruction 15 was harmless because OSPTA offered no evidence of misrepresentation and failed to prove that it was induced to enter the lease based on fraud. The evidence of misrepresentation was that 1) prior to the opening of the Massaponax office building, OSC was OSPTA's primary referral source; 2) at that time, OSC did not have its own physical therapy practice; 3) Ehman spoke with OSC doctors about their plans and needs upon expansion to the Massaponax office; 4) OSC hired two physical therapists from OSPTA in a surreptitious manner; and 5) OSC never told OSPTA that it was going to open a physical therapy practice. The jury was instructed that "[a] misrepresentation may result from silence or from the suppression of facts as well as from an affirmative representation." Therefore, the issues of whether there was actual evidence of misrepresentation and fraud were for the jury to decide.

represent the authority of the group?' " From this question, we can infer that during the deliberations the jury considered whether some members of Summit committed fraud. If the fraud was committed in the ordinary course of the LLC's business, then fraudulent acts by one member of the LLC would bind it. If, however, the fraud was not committed in the ordinary course of the LLC's business, then the jury would have had to have found that the fraudulent activity was "authorized by the other members . . . ." Code § 13.1-1021.1(A)(3). The danger is that by omitting necessary language from Instruction 15, the jury may have been misled into thinking that to find Summit liable the activity must have been authorized by the other members even if the fraudulent act was within the ordinary course of Summit's business. Because we cannot tell whether the jury believed that fraud was committed in the ordinary course of OSC's business or in the ordinary course of Summit's business, we cannot conclusively say that the jury was not misled. Therefore, the granting of Instruction 15 was not harmless error.

## III. CONCLUSION

For the foregoing reasons, we will reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>

JUSTICE McCLANAHAN, concurring in part and dissenting in part.

Although I concur in the majority's holding that the trial court erred in giving Instruction 15, I believe the trial court's error was harmless since there was no evidence the misrepresentations were made "for apparently carrying on in the ordinary course [of Summit's] business."  Code § 13.1-1021.1(A)(2).

The evidence at trial established there were no discussions between the partners in OSPTA and the physicians from OSC regarding the continuation of referrals, OSPTA's reliance on referrals from OSC, or the intention of OSC to offer in-house physical therapy services.  Instead, partners in OSPTA testified they assumed OSC would continue making physical therapy referrals to OSPTA at the same level and would not provide its own in-house physical therapy services.  Thus, OSPTA's theory of fraudulent inducement was based on OSC's concealment of its true intentions to provide its own physical therapy services.

These misrepresentations were made "for apparently carrying on in the ordinary course [of OSC's] business," id., which was the provision of orthopedic medical services.  They were not made "for apparently carrying on in the ordinary course [of Summit's] business," id., which was limited to purchasing the medical office building from MMP and assuming the leases entered into between MMP and its tenants.  Because Summit is, both factually and legally, an entity that exists separate and apart from the

medical practices operated by its members, any misrepresentations made by the members of OSC in the course of their medical practice could not have been made in the course of Summit's real estate business.[*]

Even if the trial court had properly instructed the jury that it could find Summit liable for fraudulent inducement if it found that misrepresentations of members of OSC were made for apparently carrying on in the ordinary course of Summit's business, the jury could not have reached a different verdict. Blue Stone Land Co. v. Neff, 259 Va. 273, 279, 526 S.E.2d 517, 519 (2000) ("Under the harmless error doctrine, the judgment of the court below will be affirmed whenever we can say that the error complained of could not have affected the result."). I would, therefore, affirm the judgment of the trial court.

---

[*] Indeed, concealment by the physicians of OSC of plans to offer physical therapy treatment apparently pre-existed their participation in the formation of Summit and the purchase of the building from MMP. The nature of this concealment as being in the ordinary course of their business in operating OSC did not change once they decided to purchase the building and become members of Summit.