PRESENT:  All the Justices

JUAN MANUEL DOMINGUEZ

                                                    OPINION BY
v.    Record No. 131091            JUSTICE WILLIAM C. MIMS
                                                  April 17, 2014
SAMUEL V. PRUETT, WARDEN

                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        Randy I. Bellows, Judge

       In this appeal, we consider whether the Circuit Court of

Fairfax County erred in denying Juan Manuel Dominguez's

petition for a writ of habeas corpus.

           I.    BACKGROUND AND MATERIAL PROCEEDINGS BELOW

   A. Procedural History

       On March 11, 2009, Juan Manuel Dominguez ("Dominguez") was

tried and convicted of malicious wounding and robbery in a jury

trial in the Circuit Court of Fairfax County.  He was sentenced

to ten years' imprisonment for malicious wounding and five

years' imprisonment for robbery, to be served concurrently.

       Dominguez appealed his convictions to the Court of

Appeals, asserting that the trial court improperly instructed

the jury as to the elements of malicious wounding, and that the

evidence was insufficient to support the convictions.  The

petition for appeal was denied by per curiam order.  Dominguez

v. Commonwealth, Record No. 2470-09-4 (May 12, 2010).  A three-

judge panel denied Dominguez's petition for rehearing, and we

refused his petition for appeal to this Court.

On February 3, 2012, Dominguez filed a petition for a writ of habeas corpus in the Circuit Court of Fairfax County.[1] As relevant to this appeal, Dominguez argued that his trial counsel provided ineffective assistance by failing to object to the malicious wounding jury instruction. The habeas court denied relief to Dominguez, holding that he failed to prove his attorney's performance was prejudicial as required under Strickland v. Washington, 466 U.S. 668 (1984).

B. Criminal Trial and Appeal

The evidence against Dominguez at trial included testimony from the victim, Eulogio Marroquen-Ulario ("Marroquen"), and the responding officer, Officer Gerard Sullivan with the Fairfax County Police Department.

Marroquen testified that he was highly intoxicated on the night of the attack. His backpack and $20 had been stolen during an attempted drug deal earlier that night. He went to a nearby convenience store to report the theft. After talking with police, Marroquen shared a beer with Dominguez outside the store and told him about the theft. Marroquen knew Dominguez "from the street," but did not know his name. Marroquen

---

[1] References to the events and rulings in the underlying criminal trial will be to those of the "trial court," and similar references to the habeas corpus proceeding will be to those of the "habeas court."

eventually walked away to inspect a "suspicious car" parked nearby. When he returned, Dominguez was gone.

As Marroquen was walking home, he was attacked by two men who hit him repeatedly with baseball bats. Marroquen testified that the assailants continued to beat him with the bats and kick him in the head when he fell to the ground. The attack did not cease until Marroquen emptied his pockets, including his wallet, onto the ground. When asked why he threw his wallet onto the ground, Marroquen responded: "[b]ecause I felt like they were killing me. . . . I offered the money because I want [sic] to save myself." Marroquen sustained several blows to the head, which required stitches.

Following the attack, Marroquen provided a detailed description of one of the assailants to Officer Sullivan. He then identified Dominguez as one of the assailants from a spread of photographs. Marroquen admitted he could not see Dominguez's face during the attack, but stated he recognized him because of his physical appearance.

At the conclusion of the evidence, the jury was instructed that the intent needed to find Dominguez guilty of malicious wounding was "intent to maim, disfigure, disable, or kill." Dominguez's trial counsel did not object to this instruction.

During subsequent deliberations, the jury asked the trial court two questions. First, the jury asked when a photograph

3

depicting Marroquen's injuries was taken. The trial court declined to answer. Three hours later, the jury asked for a definition of the term "disable" in the context of distinguishing between malicious wounding and unlawful wounding. The trial court directed the jury to rely on the given instructions; however, it noted that the difference between malicious wounding and unlawful wounding was whether the act in question was done with malice.

The jury ultimately convicted Dominguez of malicious wounding, in violation of Code § 18.2-51, and robbery, in violation of Code § 18.2-58. Dominguez appealed his convictions to the Court of Appeals, arguing that the jury was improperly instructed on malicious wounding. Dominguez argued that the instruction omitted the word "permanently," eliminating the element of intent to cause "permanent" injury.

The Court of Appeals denied Dominguez's petition for appeal. With respect to the malicious wounding instruction, the Court of Appeals held that Dominguez failed to object to the instruction. Consequently, Rule 5A:18 barred it from considering the merits of his argument. The Court of Appeals refused to apply the ends of justice exception in Rule 5A:18, stating that "any error . . . in instructing the jury was not material" because "there was sufficient and competent evidence

4

in the record that [Dominguez] acted with [the requisite] intent."

C. Habeas Corpus Proceeding

Dominguez filed a habeas petition through newly-retained counsel. Dominguez alleged that he received ineffective assistance of counsel at trial because, among other things, his trial counsel failed to object to the malicious wounding instruction.

Henry J. Ponton, Warden of the Mecklenburg Correctional Center (the "Warden"), filed a motion to dismiss Dominguez's habeas petition.[2] The Warden argued that Dominguez's ineffective assistance claim failed to meet the "prejudice" prong of the two-part test set forth in Strickland, 466 U.S. at 687.

After hearing argument, the habeas court denied relief to Dominguez and dismissed his petition. The judge stated that, "given the evidence of [Marroquen] saying he was almost killed, being attacked with a bat, needing multiple stitches, being hit all over the head, being in pain in various places, I just don't see . . . prejudice flowing from the failure to object to th[e malicious wounding] instruction."

---

[2] After the motion to dismiss was filed, Dominguez was transferred to Coffeewood Correctional Center. Samuel V. Pruett, the Warden of Coffeewood, was substituted as the respondent in this case.

Dominguez timely filed a petition for appeal.  We granted Dominguez's appeal limited to the following assignment of error:

> The Circuit Court erred when it denied . . . Dominguez's claim that his trial counsel provided ineffective assistance of counsel, in violation of Strickland v. Washington . . . and the Sixth Amendment, by failing to object to the trial court's deficient jury instruction on malicious wounding that omitted the essential requirement of an intent to "permanently" maim, disfigure, or disable the victim.

## II.  DISCUSSION

### A.  Standard of Review

Whether an inmate is entitled to habeas relief is a mixed question of law and fact, which we review de novo.  Laster v. Russell, 286 Va. 17, 22, 743 S.E.2d 272, 274 (2013).  "[T]he [habeas] court's findings and conclusions are not binding upon this Court, but are subject to review to determine whether the [habeas] court correctly applied the law to the facts." Hash v. Director, Dep't of Corr., 278 Va. 664, 672, 686 S.E.2d 208, 212 (2009) (quoting Curo v. Becker, 254 Va. 486, 489, 493 S.E.2d 368, 369 (1997)).  "The [habeas] court's factual findings, however, are entitled to deference and are binding upon this Court unless those findings are plainly wrong or without evidence to support them."  Hedrick v. Warden, Sussex I State Prison, 264 Va. 486, 496, 570 S.E.2d 840, 847 (2002).

6

B.   Analysis

Dominguez alleges that the habeas court erroneously denied his claim that his trial counsel provided ineffective assistance, in violation of Strickland and the Sixth Amendment, by failing to object to the trial court's jury instruction on malicious wounding that omitted the element of intent to "permanently" maim, disfigure or disable the victim.

In Strickland, the United States Supreme Court established a two-prong test to assess whether an attorney's representation was ineffective.  466 U.S. at 687.  To prevail on an ineffective assistance of counsel claim, Dominguez must satisfy both the "performance" prong and the "prejudice" prong of the Strickland test. Id.  To satisfy the first prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688.  Under the second prong, "the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

If Dominguez makes an insufficient showing on either Strickland component, his ineffective assistance claim fails. Id. at 697.  Accordingly, while we agree that a proper malicious wounding instruction would include the element of intent to "permanently" maim, disfigure or disable the victim,

7

see Burkeen v. Commonwealth, 286 Va. 255, 259, 749 S.E.2d 172, 174 (2013), we will focus first on the "prejudice" prong of the analysis.  See Strickland, 466 U.S. at 697 (observing that it is often preferable to address the prejudice requirement in full at the outset).

In analyzing the "prejudice" component, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."  Id. at 696; see also Luchenburg v. Smith, 79 F.3d 388, 391 (4th Cir. 1996).  We must consider the totality of the evidence before the habeas court.  Lewis v. Warden, Fluvanna Corr. Ctr., 274 Va. 93, 113, 645 S.E.2d 492, 504 (2007); Strickland, 466 U.S. at 695.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  Id. at 691.  To prove the judgment was affected by counsel's error,

> [t]he [habeas petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . [T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.

Id. at 694-95.

Dominguez argues that he was prejudiced by his trial counsel's failure to object to the malicious wounding

8

instruction because the element of "permanence" was a debatable issue, and had the jury been correctly instructed there is a reasonable probability it would not have concluded that Dominguez intended to "permanently" maim, disfigure or disable Marroquen. He asserts four main arguments to support his claim that there is a reasonable probability the result of the proceeding would have been different.

First, Dominguez argues that the lack of severity of Marroquen's injuries belies any intent to permanently injure. He claims that although Marroquen made much of the assault at times, his testimony was unreliable. Dominguez points out that Marroquen had no remaining scars or injuries at the time of trial. He also notes that the probation officer chose not to enhance his Sentencing Guidelines point total based on serious physical injury.

This argument is without merit. The jury clearly resolved any concerns about the credibility of Marroquen's testimony in his favor. Marroquen's actual injuries are in no way dispositive of Dominguez's intent with respect to the assault. It is entirely possible for an assailant to intend to permanently injure a victim, but only succeed in temporarily injuring him. The severity and permanence of the actual wounds are only dispositive when a defendant

9

is charged with aggravated malicious wounding. See Code §
18.2-51.2.

Dominguez next contends that the jury's questions
during deliberations support a finding of prejudice.  The
jury asked when a photograph of the victim was taken and
for the legal definition of "disable."  According to
Dominguez, these questions indicate that the permanence of
Marroquen's injuries was controversial.  Thus, he claims
there is a reasonable probability that, had the jury been
correctly instructed, he would not have been convicted of
malicious wounding.

We disagree.  Dominguez's argument starts with the
assumption that the jury's questions somehow signify its
belief that Marroquen's injuries were not permanent.  We
do not read the questions that way.[3]  Even if we did, we
still would not characterize them as some tacit finding of
fact by the jury.  "A question posed to the court during
deliberations . . . could suggest as little as the
tentative views of a single juror.  It cannot be
extrapolated into a binding finding by the jury as a

---

[3] The jury asked for the definition of "disable" in the
context of distinguishing between malicious wounding and
unlawful wounding.  If anything, this question signifies
confusion, because the definition of "disable" in no way
distinguishes the two charges.  See Code § 18.2-51.

whole." Kennemore v. Commonwealth, 50 Va. App. 703, 709,
653 S.E.2d 606, 609 (2007); see also 8 Wigmore, Evidence §
2348, at 680 (McNaughton rev. 1961). We decline to
speculate as to the jury's finding on the permanence of
Marroquen's injuries based on questions asked during the
deliberative process.[4] See Couture v. Commonwealth, 51 Va.
App. 239, 247, 656 S.E.2d 425, 429 (2008).

Dominguez next argues that Marroquen's own theory of
the assault effectively concedes that Dominguez lacked the
intent to permanently injure Marroquen. He claims that
Marroquen and the Commonwealth's attorney repeatedly
argued that the purpose of the assault was to steal from
Marroquen, not to permanently injure him. Marroquen
testified that he assumed the assailants wanted money, and
that they released him as soon as he gave them his wallet.
The Commonwealth reiterated this theory in its closing
argument: "[Marroquen] gave them the money and that's
when the attack stopped. And that's how you can tell what

_____

[4] We acknowledge that in Orthopedic & Sports Physical
Therapy Assocs. v. Summit Grp. Props., LLC, 283 Va. 777, 724
S.E.2d 718 (2012), we considered a question raised by the jury
in determining whether to set aside the verdict due to an
erroneous instruction. However, in that case, we used the
jury's question as proof that we could not conclusively say the
jury had not been misled by the erroneous instruction. Id. at
785, 724 S.E.2d at 722-23. We did not use the question to
speculate as to the jury's opinion on any specific issue, as
argued by Dominguez.

11

their purpose was.  Because once that purpose was accomplished, they ceased to beat him.  They were doing this to take his money."

To begin, Dominguez's assertion is contradicted by parts of the record.  Marroquen admitted on cross examination that Dominguez and his accomplice never asked for money.  Marroquen also explicitly testified that the attack "was not for money.  It was just for the sake of assaulting me.  But I – I offered the money because I want [sic] to save myself."  Likewise, Dominguez misinterprets the Commonwealth's attorney's statements during closing argument.  The Commonwealth's attorney argued that Dominguez intended to steal from Marroquen and therefore was guilty of robbery; however, he never suggested that Dominguez's intent to steal supplanted his intent to permanently injure.  To the contrary, the Commonwealth's attorney explicitly stated, "there can be no doubt that in fact [Dominguez] is guilty of malicious wounding. . . . [T]here's zero question.  It can't even be argued that Mr. Marroquen was [not] the victim of a malicious wounding and the victim of a robbery."  The Commonwealth's theory throughout the trial was that Dominguez intended both to steal from Marroquen and to maliciously wound him in the process.

12

Dominguez appears to confuse "intent" with "motive." The attack arguably was motivated by a desire to obtain money. Nevertheless, to concede that Dominguez's motive was to obtain money is not to say that this also was his intent. See Banovitch v. Commonwealth, 196 Va. 210, 218, 83 S.E.2d 369, 374 (1954). "Motive is the moving cause which induces action, while intent is the purpose to use a particular means to effect a definite result." Id. Dominguez may well have been motivated by a desire to obtain money, while at the same time intending to permanently injure or disable Marroquen as a means to effectuate that aim.

Finally, Dominguez claims that the nature of the attack itself disproves any intent to permanently injure. He focuses on the fact that Marroquen's head injuries were just as likely to have been caused by kicks as blows with a baseball bat. Dominguez argues that, while permanent injury is the natural and probable consequence of blows to the head with a violent instrument such as a baseball bat, the same cannot be said for blows to the head with a foot. See Lee v. Commonwealth, 135 Va. 572, 577-78, 115 S.E.2d 671, 673 (1923).

We disagree. "The intent to maliciously wound . . . 'may, like any other fact, be shown by circumstances.'"

Burkeen, 286 Va. at 259, 749 S.E.2d at 175 (quoting Banovitch, 196 Va. at 216, 83 S.E.2d at 373). Thus, it is proper for a jury to consider not only the method by which a victim is wounded, but also the circumstances under which that injury was inflicted in determining whether there is sufficient evidence to prove intent to permanently maim, disfigure or disable a victim. See Dawkins v. Commonwealth, 186 Va. 55, 63, 41 S.E.2d 500, 504 (1947).

In the recent case of Burkeen v. Commonwealth, we unanimously held that the intent to permanently injure may be presumed from a single blow with a bare fist, where that single blow is combined with circumstances of violence and brutality. 286 Va. at 259, 749 S.E.2d at 175. In that case, "the victim did nothing to provoke the attack, and he was hit with extreme force in a vulnerable area of his body while he was defenseless and not expecting such a blow. The blow resulted in serious and disfiguring injury." Id. at 261, 749 S.E.2d at 175. Under those circumstances, we held that there was sufficient evidence of violence and brutality for the court to conclusively presume that, even though the assailant delivered only one blow with a bare fist, he

14

intended to permanently injure the victim. Id. at 261, 749 S.E.2d at 176.

As in Burkeen, the evidence in the present case clearly gave rise to a conclusive presumption that Dominguez intended to permanently injure Marroquen. The evidence established that the attack was unprovoked; occurred while Marroquen was unsuspecting and defenseless; targeted a vulnerable area of Marroquen's body – his head; and resulted in head injuries that required medical attention. Unlike the attack in Burkeen, Dominguez did not just deliver a single blow with a bare fist. He and his co-assailant repeatedly kicked and struck Marroquen with enough force to knock him down. Thus, even if Marroquen's head injuries were caused by kicks rather than blows with a bat, the evidence conclusively established that Dominguez acted with the requisite intent to permanently injure Marroquen. Thus, the erroneous malicious wounding instruction did not render the trial fundamentally unfair. See Strickland, 466 U.S. at 696; Luchenburg, 79 F.3d at 391.

Accordingly, Dominguez's claim for ineffective assistance of counsel fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland. 466 U.S. at 687. Thus, Dominguez cannot meet his burden of

proving that there is a reasonable probability that, had the jury been properly instructed, the result of the trial would have been different.  Id. at 694.

### III.  CONCLUSION

For the reasons stated, we find no error in the habeas court's dismissal of Dominguez's petition.  We will affirm the judgment of the habeas court.

Affirmed.