COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Beales and Decker
Argued by teleconference

BRIAN LESTER WALTON, SR.

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 1295-14-2                JUDGE RANDOLPH A. BEALES
                                              APRIL 14, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF MIDDLESEX COUNTY
Ray W. Grubbs, Judge Designate

John E. Robins, Jr., for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Brian Lester Walton, Sr. (appellant) appeals the jury's verdict finding him guilty of a Class 6

felony for violating a protective order, third offense, under Code § 18.2-60.4. On appeal to this

Court, appellant argues that the evidence was insufficient to support his conviction and that the jury

was not instructed correctly. For the following reasons, we affirm.

I. BACKGROUND

We consider the evidence on appeal "'in the light most favorable to the Commonwealth,

as we must since it was the prevailing party'" in the trial court. Beasley v. Commonwealth, 60

Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296,

330, 601 S.E.2d 555, 574 (2004)). According to the record on appeal, appellant and Christopher

Riddick, the victim in this case, reside in the same Middlesex County subdivision. It is undisputed

that Riddick obtained a protective order against appellant directing, among several restrictions, that

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

appellant "shall have no contact of any kind with [Riddick]." The record on appeal establishes that appellant was convicted at least twice in January 2013 for violating the protective order in July 2012 and again in November 2012.[1] Appellant does not dispute that the protective order barring him from having any contact with Riddick was effective until January 2015.

In September 2013, a Middlesex County grand jury charged appellant with committing a third-offense felony violation of the protective order on June 1, 2013. The grand jury charged appellant with a Class 6 felony offense under Code § 18.2-60.4, which states in pertinent part:

> Any person who violates any provision of a protective order issued pursuant to § 19.2-152.8, 19.2-152.9, or 19.2-152.10 is guilty of a Class 1 misdemeanor. Conviction hereunder shall bar a finding of contempt for the same act. The punishment for any person convicted of a second offense of violating a protective order, when the offense is committed within five years of the prior conviction and when either the instant or prior offense was based on an act or threat of violence, shall include a mandatory minimum term of confinement of 60 days. *Any person convicted of a third or subsequent offense of violating a protective order, when the offense is committed within 20 years of the first conviction and when either the instant or one of the prior offenses was based on an act or threat of violence, is guilty of a Class 6 felony and the punishment shall include a mandatory minimum term of confinement of six months.* The mandatory minimum terms of confinement prescribed for violations of this section shall be served consecutively with any other sentence.

(Emphasis added).

At appellant's jury trial, Riddick testified that an altercation occurred with appellant on the morning of June 1, 2013, as Riddick was retrieving his dog from property owned by a friend, David

---

[1] The record contains two January 2013 misdemeanor conviction orders from the Middlesex County General District Court. Appellant does not contest these prior conviction orders under Code § 18.2-60.4. The record also contains a third misdemeanor conviction order from the Circuit Court of Middlesex County that was entered in either January 2013 or June 2013. It is unclear from the record whether this circuit court order relates to one of the prior convictions from the general district court or whether the circuit court order constitutes a different offense under Code § 18.2-60.4. Regardless, appellant does not dispute that he has two previous convictions for violation of a protective order under Code § 18.2-60.4.

Ross. This property is located adjacent to property owned by appellant's parents, where appellant resides.[2] Riddick testified that he put his dog in the backseat of his truck and began preparing to back out of Ross's driveway. Riddick then saw "quick movement" coming from the Waltons' property that "kind of caught me off guard." Focusing his attention on the Waltons' property, Riddick could "clearly see" appellant "coming out of his house" and up the Waltons' driveway. According to Riddick, appellant was coming toward him "at a fast rate" and was holding "something in his hand" – causing Riddick's heart to start "to beat fast." Riddick explained at trial that he became "nervous" and "scared" because he and appellant had experienced "problems" in the past. Riddick testified that he "didn't know what was going on" and that appellant was coming at such a "fast clip" that Riddick thought he was "going to be intercepted" by appellant before he could leave the area in his truck. In light of his past experiences with appellant, Riddick testified that he "just wanted to get out of there."

Riddick managed to back out of the driveway, but his truck apparently was still facing the wrong direction on a narrow access road when he saw that appellant was holding a video camera and was videotaping him. Riddick also saw that appellant's dog, a German Shepherd, was present – and was not on a leash. Riddick testified:

> [I]t was very scary to me. He was circling around my car showing his teeth. My dog was in the [truck] very agitated. I was having a hard time controlling my dog from coming across my lap and having an altercation with his dog. His dog is at my door barking, showing his teeth at me. My window had been down because I was using it to back out as well as the mirror. So I had to roll that up. It was just a very tense moment. It was – it added to my fear.

---

[2] David Ross was out of town at that time and also did not testify at appellant's jury trial. Burton "Blake" Ross, the brother of David Ross, testified that he lives next to David Ross and that Riddick was welcome both on the property owned by him and the property owned by his brother. The record on appeal establishes that Riddick did not enter the adjacent property owned by appellant's parents on the morning of June 1, 2013.

Riddick also explained:

> I stopped the car because I was trying to collect my thoughts. You know, I had run-ins with this individual before, and I was trying to figure out what I was going to do to protect myself number one; and number two, how to get out of that situation. I didn't know what he was going to do, what he was planning to do.

Riddick testified that he "was scared because if I turned around and looked, you know, Brian could come towards me" and "could do anything." Meanwhile, appellant's dog was "circling around the car" causing Riddick to be "afraid if I back up I'm going to run over his dog" and further escalate the situation. Riddick decided to "sit there as he's filming me."

After a few minutes, Riddick eased forward in his truck in an attempt to turn around using a different driveway. Riddick said good morning to appellant in order "to keep the situation as defused and as calm as possible." According to Riddick, appellant then responded to him, "Good morning, faggot." After Riddick reminded appellant that he could not talk to him due to the protective order, appellant got out his cell phone and dialed 911. Appellant alleged during the 911 call that Riddick was harassing him and was on his parents' property.[3] Riddick decided to stay put until the police came "so that I can state what's really going on here."

At one point during this standoff – apparently when appellant's German Shepherd was not still circling Riddick's truck – Riddick decided to get out of the truck and look for "a stick" that he thought was in the back of his truck. He testified that he wanted the stick "in case I needed to protect myself." The stick was not there, however, and Riddick got back in the truck. Appellant remained in the area – at times talking to his father. Riddick testified that appellant's father returned to his house after about ten minutes. According to Riddick, appellant "went back

---

[3] The recording of appellant's 911 telephone call and the brief video recording that appellant made during the incident were presented to the jury. In addition, the jury had before it survey maps and live testimony concerning the location of the property lines in the subdivision. Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party below, the record certainly supports the conclusion that Riddick did not enter the property owned by appellant's parents.

and forth a couple of times" from the area where Riddick was parked to the Waltons' property. After calling both his wife and the wife of David Ross, Riddick decided to drive home and call the police.

At trial, appellant testified that he started recording the incident with a video camera as Riddick "was pulling into our driveway heading towards me." Appellant's testimony continued:

> Then he turned around, came back, and he said, good morning, Brian. And then next thing you know, he comes riding by me. He says, oh, you violated your protective order. I didn't say nothing. I'm sitting there, had the camera just pointed at him. He says, oh, you called me a faggot. I didn't say nothing. That's all on tape, and he goes right on back down to Blake's house and turns around. He turned around at Blake's house and then he pulls back up in front of me and just sits here.
>
> Then my German Shepherd, he's very protective. He goes out and sees what it's all about. He starts circling his truck, come on back by me, [another neighbor's] dog also. Well, then he steps out of the truck, walks to the back of his truck, lifts up the back and he says, yes, this time I'll have you locked up; David [Ross] and I are going to have your father killed. So I still don't say nothing. So I'm sitting there with the camera, everything on film. My father pulls up and says what's going on. I said, Dad, I said these protective orders ought to be able to work both ways. I said he's out here trying to provoke me into saying something to him. I said I haven't said anything to him.

However, the brief video recording that appellant's counsel offered into the evidence at trial and presented to the jury did not contain any such statements from Riddick to appellant.

Appellant testified during direct examination that he videotaped the incident because he "was trying to protect myself and my family from" Riddick and that his German Shepherd did not snarl or bark at Riddick. On cross-examination, however, appellant acknowledged that no protective orders had been issued against Riddick and that appellant's dog could be heard barking on the video recording.

The trial court denied appellant's motions to strike, and the jury convicted appellant of the charged Class 6 felony offense under Code § 18.2-60.4. Appellant filed a motion to set aside

the verdict alleging that the jury's verdict was not supported by sufficient evidence. The trial court denied that motion, finding that "there was sufficient evidence for the jury to consider in its deliberations as to whether there was a threat of violence."

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE – ASSIGNMENTS OF ERROR 1 AND 3

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner, 268 Va. at 330, 601 S.E.2d at 574, "[w]e must instead ask whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

In his first assignment of error, appellant argues that the evidence failed to prove beyond a reasonable doubt that he committed a violation of the protective order that was "based on an act or threat of violence" – as was required to convict appellant of a Class 6 felony under Code §18.2-60.4.[4] Thus, we must determine whether a rational factfinder could conclude that appellant

---

[4] In his third assignment of error, appellant argues that the evidence failed to prove any violation of Code § 18.2-60.4 at all because he claims that the evidence failed to prove that he made "contact" with Riddick. This argument is meritless. The record amply supports the conclusion that appellant intentionally made contact with Riddick – which was all that was required to convict

committed a violation of the protective order on June 1, 2013 that involved a threat of violence.[5] See Code § 18.2-60.4. The Supreme Court has stated, "When a defendant challenges on appeal the sufficiency of the evidence to sustain his conviction, the appellate court has a duty to examine all the evidence that tends to support the conviction." Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008); see Morris v. Commonwealth, 58 Va. App. 744, 751, 716 S.E.2d 139, 142 (2011). On appeal, "we do not consider each piece of evidence in isolation. Instead, we review the totality of the evidence to determine whether it was sufficient to prove [the] offense." Bowling v. Commonwealth, 51 Va. App. 102, 107, 654 S.E.2d 354, 356 (2007). Viewing the totality of the evidence in the light most favorable to the Commonwealth (as we must, since the Commonwealth was the prevailing party below), we cannot say that the jury here did not rationally conclude that Riddick was subjected to a threat of violence on June 1, 2013.

Riddick testified that he was simply retrieving his dog from the property of David Ross on the morning of June 1, 2013. Contrary to appellant's testimony in the trial court, which must be discarded on appeal because it conflicts with the Commonwealth's evidence, Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980), the record certainly does not support the outlandish assertion that Riddick's aim was to subject appellant to a felony conviction and then kill appellant's father. Instead, Riddick testified that he had put his dog in his truck and was about to back out of David Ross's driveway when he saw appellant coming up the hill from the Waltons' property at a "fast rate." Riddick saw that appellant was holding something in his hand –

---

appellant of violating the protective order forbidding him from making "contact of any kind" with Riddick. See Elliott v. Commonwealth, 277 Va. 457, 675 S.E.2d 178 (2009).

[5] The Commonwealth acknowledges that appellant's prior convictions under Code § 18.2-60.4 were not based on acts or threats of violence. The Commonwealth also acknowledges that the evidence at trial did not prove an actual *act* of violence toward Riddick on June 1, 2013.

although Riddick could not yet discern what that object was. Riddick testified that he "just wanted to get out of the neighborhood."

Given Riddick's "problems with [appellant] in the past," the fact that appellant was holding a then-unknown object, and the fact that appellant was approaching at a "fast clip," the jury was entitled to accept as credible Riddick's testimony that those circumstances caused Riddick to be "nervous" and "scared." See Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (explaining that "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the factfinder who has the opportunity to see and hear that evidence as it is presented"). Furthermore, additional circumstances, each mounting upon the others, could "lead a reasonable mind irresistibly to a conclusion" that the charged protective order violation on June 1, 2013 involved a threat of violence. Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991); see Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).

Riddick testified that the presence of appellant's German Shepherd dog, in particular, "added to [Riddick's] fear." The jury, acting in its capacity as the factfinder, was entitled to accept and give appropriate weight to Riddick's testimony describing how appellant's dog acted in a menacing fashion and potentially threatened the safety of Riddick (and Riddick's dog). See Sandoval, 20 Va. App. at 138, 455 S.E.2d at 732. Riddick testified that appellant's dog was present without a leash on property that was not owned by appellant's parents, that appellant's dog was barking while circling Riddick's truck, and that appellant's dog was even "at the door" of Riddick's truck while baring his teeth. Appellant's dog acted in such an intimidating manner that Riddick, whose driver's side window was open to aid him in backing out of a tight driveway, felt enough threat to his safety that he felt he needed to close the window. While describing the situation at trial, Riddick consistently stated that he felt "fear," that he was "scared," and that he was "terrified."

In addition, the jury could reasonably infer that appellant permitted his own dog to cause Riddick to fear for his safety. See Hudson, 265 Va. at 514, 578 S.E.2d at 786 ("We have held in many cases that, upon appellate review, the evidence and all reasonable inferences flowing therefrom must be viewed in the light most favorable to the prevailing party in the trial court."). It is a settled principle of Virginia law that appellate courts, such as this Court, must defer "not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010). Here, appellant not only permitted his German Shepherd to approach the scene of the incident without a leash, but the record also establishes that appellant did not take steps to contain or restrain his dog, even when his dog came to the door of Riddick's truck while barking and baring his teeth. The evidence does not reflect that appellant commanded his dog to leave, that appellant restrained his dog by placing a leash on him, or that appellant removed his dog from the scene so as to end the threat that his German Shepherd posed to Riddick. Based on this record, the jury could infer that appellant permitted – or even countenanced – his dog's actions in enhancing the fear that Riddick already felt.

On brief, appellant argues that any fear felt by Riddick was not reasonable under the circumstances. Appellant also argues that any threat directed by his dog was toward Riddick's dog and not toward Riddick himself. Appellant further argues that Riddick was able to back out of the driveway owned by David Ross (only to stop his truck in the wrong direction of a narrow access lane) and that Riddick left his truck at one point during the incident (to look for a stick in the back of his truck). These were all circumstances that the jury was able to weigh among the totality of the circumstances of the case. "As an appellate court, we are not permitted to reweigh the evidence." Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007). The jury – the factfinder in this case – was in the best position to assess whether Riddick's repeated testimony that he felt fearful,

scared, and terrified was reasonable under the circumstances. See Bradley v. Commonwealth, 196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955) ("The living record contains many guideposts to the truth which are not in the printed record; not having seen them ourselves, we should give great weight to the conclusions of those who have seen and heard them."). In its role as the factfinder, the jury was permitted to infer that Riddick drove his truck very carefully in an attempt not to escalate the situation by hitting appellant's dog – who was, of course, near Riddick's truck apparently circling it – and that Riddick only left his truck in an effort to find an object which he could use to defend himself.

Therefore, viewing the evidence in the light most favorable to the Commonwealth (as we must since it prevailed at trial), the jury was able to conclude that several circumstances in the record were consistent with a threat of violence toward Riddick. See Code § 18.2-60.4. We will not disturb that conclusion on appeal because "we have no authority 'to preside *de novo* over a second trial.'" Ervin v. Commonwealth, 57 Va. App. 495, 503, 704 S.E.2d 135, 139 (2011) (en banc) (quoting Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004)).

Moreover, settled appellate law holds that, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). Here, appellant testified that the videotape he made on June 1, 2013 included several circumstances that he claimed would support an innocent explanation for his actions and would show that Riddick, instead, was the instigator. For example, appellant indicated during direct examination that he had recorded Riddick alleging that appellant had called him a "faggot"[6] even though appellant had been silent – as well as Riddick threatening to send appellant to

---

[6] Riddick testified that appellant "definitely used the word faggot, and it is a word that he uses, I guess, to try to get at me . . . ." A rational factfinder could infer that appellant called Riddick a "faggot" with the intent to incite or to escalate the situation.

jail and threatening to kill appellant's father. However, this testimony was contradicted by appellant's actual video recording that was admitted at trial. The jury was permitted to reject appellant's testimony that the events had occurred as alleged by appellant, but that those events were not captured on the video recording because of appellant's lack of familiarity with the recorder. It was also within the jury's discretion to reject appellant's initial claim at trial that his dog was not even barking – and to weigh that false testimony among the totality of the circumstances establishing appellant's guilt under the Class 6 felony provision of Code § 18.2-60.4.

Therefore, given the totality of the circumstances in the record, a rational factfinder could reach the same conclusion that the jury reached in this case. Accordingly, we hold that sufficient evidence supported the jury's conclusion that appellant's June 1, 2013 protective order violation was based on a threat of violence – and the jury's decision to convict appellant under the Class 6 felony provision of Code § 18.2-60.4.

JURY INSTRUCTIONS – ASSIGNMENTS OF ERROR 2, 4, AND 5

This Court's "'sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). Even if "an instruction correctly states the law, if it is not applicable to the facts and circumstances of the case, it should not be given." Hatcher v. Commonwealth, 218 Va. 811, 813-14, 241 S.E.2d 756, 758 (1978) (citing Banner v. Commonwealth, 204 Va. 640, 647, 133 S.E.2d 305, 310 (1963)).

In his second assignment of error, appellant challenges the trial court's decision to issue Jury Instruction No. 7.[7] Appellant contends that the trial court "erroneously instructed in Juror Instruction No. 7, as said instruction did not contain all of the elements necessary to prove a felonious violation of the offense, to-wit, it failed to state that at least one of the prior offenses or the present offense must involve an act or threat of violence."

Assuming without deciding that appellant raised a timely objection and adequately preserved this issue for appellate review,[8] the trial court did not err as alleged in appellant's second assignment of error. Appellant acknowledges on appeal, as he must, that the jury was also given Jury Instruction A. That instruction informed the jury that the Commonwealth had the burden of proving beyond a reasonable doubt that appellant had been "previously convicted twice before of

---

[7] Jury Instruction No. 7 stated, in pertinent part:

> The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
>      (1) That the defendant had contact with a person or persons named in a protective order after having been prohibited from doing so by order of a court; and
>      (2) That the defendant had been served with a copy of such order; and
>      (3) That the defendant has at least two (2) prior convictions of violating a protective order and that this offense was committed within twenty (20) years of the prior convictions.
>
>      If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the offense as charged, then you shall find the defendant guilty but you shall not fix the punishment until your verdict has been returned and further evidence has been heard by you.

[8] On the day of trial, appellant did not raise the same challenge to Instruction No. 7 that he raises in his second assignment of error on appeal. To the extent that appellant's motion to set aside the verdict could be construed as a challenge to Instruction No. 7 on the basis that it did not instruct the jury of the "act or threat of violence" element of Code § 18.2-60.4, we will assume without deciding, for purposes of this case only, that the trial court impliedly granted leave to excuse appellant's failure to raise that issue before the jury began its deliberations. See Rule 3A:16(c).

violating a protective order, within 20 years of the first conviction and *when either this alleged event or one of the prior convictions was based on an act or threat of violence*." (Emphasis added). Therefore, Instruction A expressly informed the jury of the "act or threat of violence" element of the crime for which appellant was charged under Code § 18.2-60.4.

During oral argument before this Court, appellant asserted that the alleged deficiency in Instruction No. 7 could not be cured by Instruction A because Instruction A was an "elements instruction" and not a "finding instruction." Contrary to appellant's assertion, however, ample Virginia case law holds that appellate courts must "'read the granted jury instructions together and consider them as a whole.'" Orthopedic & Sports Physical Therapy Assocs. v. Summit Group Props., LLC, 283 Va. 777, 782, 724 S.E.2d 718, 721 (2012) (quoting Hawthorne v. VanMarter, 279 Va. 566, 586, 692 S.E.2d 226, 238 (2010)); Jones v. Commonwealth, 228 Va. 427, 444, 323 S.E.2d 554, 563 (1984) (reading "the instructions as a whole, however, we find that they cover every essential element"); Baker v. Commonwealth, 218 Va. 193, 195, 237 S.E.2d 88, 89 (1977) ("Reading the instructions as a whole, we find no reversible error and the judgment will be affirmed."); see also Victor v. Nebraska, 511 U.S. 1, 5 (1994) ([T]aken as a whole, the instructions [must] correctly convey the concept of reasonable doubt to the jury."); Hudson, 265 Va. at 512, 578 S.E.2d at 785 (citing Victor). Reading all of the given instructions together as a whole, it is clear that the jury was correctly instructed on the elements of the felony offense under Code § 18.2-60.4.

Appellant also argues in his fourth and fifth assignments of error that the jury was not correctly instructed on the subject of "contact." He contends that the trial court erred in refusing two proposed jury instructions that referred to the requirements for obtaining a protective order under Code § 19.2-510. These proposed instructions stated that a court issuing a protective order may prohibit such intentional contact "by the respondent with the petitioner as the court deems

*necessary for the health or safety*" of the petitioner. (Emphasis added). However, the trial court did not abuse its discretion when it refused appellant's proposed instructions.

In this case, appellant was charged with violating (as a third offense) the protective order that Riddick had already obtained – which absolutely barred appellant from making "contact of any kind" with Riddick. By contrast, appellant's proposed instructions on "contact" would have suggested to the jury a narrower range of prohibited contact than the protective order's broad prohibition forbidding *contact of any kind*. Appellant's proposed instructions were not appropriate for the jury's consideration under the circumstances of this case.

Therefore, contrary to appellant's contentions on appeal, the jury here was correctly instructed in this case.

### III. CONCLUSION

The jury's verdict was supported by sufficient evidence. In addition, the jury was correctly instructed by the trial court. Accordingly, for the foregoing reasons, we affirm appellant's Class 6 felony conviction under Code § 18.2-60.4 for violating a protective order, third offense.

Affirmed.