JUSTICE HASSELL
delivered the opinion of the Court.
In this appeal of a judgment in a medical negligence action, we consider whether the defendant was entitled to present evidence that *450 another doctor, who is not a party to this litigation, breached the standard of care owed to a patient.
Walter Atkinson, administrator of the estate of Ruby E. Atkinson (Atkinson), filed a motion for judgment against Daniel W. Scheer, a doctor of osteopathic medicine. The estate alleged that Dr. Scheer breached the standard of care owed to Atkinson and that her death was caused by Dr. Scheer’s negligence. Dr. Scheer filed a grounds of defense and denied any acts of negligence.
During a jury trial, Dr. Scheer was permitted to ask the plaintiff’s expert witness, over the plaintiff’s objection, whether another physician who had also treated Atkinson had committed acts of negligence. The trial court permitted Dr. Scheer to elicit such testimony, and at the conclusion of the trial, the jury returned a verdict in favor of Dr. Scheer. The plaintiff appeals.
We will state the facts and all reasonable inferences therefrom in favor of Dr. Scheer, the recipient of a jury verdict confirmed by the trial court. Atkinson began to experience symptoms of a heart attack around 5:00 p.m. on September 12, 1994. She had pain and nausea, and she vomited. She arrived at Richmond Memorial Hospital’s emergency room at 6:50 p.m., and she complained of pain in her chest, neck, and left shoulder.
An emergency room nurse placed Atkinson on oxygen, extracted a blood sample from her, and connected her to a continuous heart monitor. The nurse gave Atkinson certain fluids intravenously and attached her to an electrocardiograph. Dr. Scheer examined Atkinson around 7:15 p.m., performed a physical evaluation, and ordered certain diagnostic tests.
Dr. Scheer testified that even though he did not make a final diagnosis of Atkinson on September 12, he made a working diagnosis that “her etiology was probably cardiac in origin, probably cardiac ischemia.” Dr. Scheer stated that a working diagnosis is “the one most likely to be what was going on with the person.” Dr. Scheer described an ischemia as “a lack of oxygen going to the heart.”
Subsequently, Dr. Scheer ordered that a patch of nitroglycerin paste be placed on Atkinson’s chest to be absorbed through her skin into her body. The nitroglycerin paste dilated her blood vessels, thereby reducing the strain on her heart which, in turn, decreased her heart’s need for oxygen. According to Dr. Scheer, after the nitroglycerin paste was administered, Atkinson’s pain abated. Atkinson’s *451 daughter, however, testified that her mother continued to experience pain.
Dr. Scheer ordered a blood test to ascertain the presence of enzymes in Atkinson’s body which would have been indicative of heart damage. Dr. Scheer had not received the results of the blood test when his emergency room shift ended at 10:00 p.m.
Dr. Scheer also contacted Dr. Selwyn Goodwin by telephone. Dr. Goodwin was a physician who was “on call” for Atkinson’s regular treating physician. Dr. Goodwin was aware of Atkinson’s past history of pulmonary embolism, a condition which could also cause chest pain. Dr. Goodwin suggested to Dr. Scheer that he order a ventilation protrusion scan which would detect the presence of this condition. This scan is commonly referred to as a VQ scan. The scan was performed, but the results were not available when Dr. Scheer’s shift ended.
When Dr. Scheer left the emergency room at about 10:00 p.m., Dr. Gayle Wampler-Adams, another emergency room physician, began treatment of Atkinson. Dr. Wampler-Adams testified that it was her “recollection . . . that [Atkinson] had been cleared for discharge, that we were awaiting VQ scan results as a final diagnostic test.”
Dr. Wampler-Adams received the results of the VQ scan, which were negative. Dr. Wampler-Adams spoke with Atkinson, performed a physical examination, and reviewed the EKG and laboratory results available to her. Dr. Wampler-Adams noted in the emergency room record that her diagnosis of Atkinson’s condition was “[ajtypical chest pain, probable GE Reflux.” Dr. Wampler-Adams also spoke by telephone with Dr. Goodwin. Dr. Wampler-Adams discharged Atkinson at 11:40 p.m. that night.
Dr. Wampler-Adams testified, without contradiction, that she relied upon Dr. Scheer’s “workup” of Atkinson when making the decision to discharge Atkinson. Shortly after her discharge, Atkinson began to experience symptoms associated with a heart attack. She began to vomit, and she complained of pain in her shoulder “down through her arm.” Her regular physician diagnosed her condition the next day as “a heart attack in progress,” and she was admitted to Richmond Memorial Hospital. She died on October 4, 1994, as a result of her heart attack.
Dr. Scheer did not present any expert witnesses at trial. His expert witnesses were disqualified from testifying in a pretrial order.
*452 Dr. David Munter, who qualified as an expert witness on behalf of the plaintiff on the subject of “emergency room care medicine,” testified within a reasonable degree of medical certainty that Dr. Scheer breached the standard of care owed to Atkinson. Specifically, Dr. Munter testified that Dr. Scheer had enough information to admit Atkinson as a patient to the hospital and that he breached the standard of care in failing to do so. Dr. Munter also opined that Dr. Scheer should have been more aggressive in his treatment of Atkinson and that Atkinson would have “had a very high probability of surviving had she been admitted” to the hospital on the evening she was treated in the emergency room and that her “high likelihood of survivability was lost.”
During Dr. Scheer’s cross-examination of Dr. Munter, the trial court permitted him to ask, over the plaintiff’s objection, whether Dr. Wampler-Adams, who had settled the estate’s claims against her, breached the standard of care owed to Atkinson. Dr. Munter testified that Dr. Wampler-Adams had breached the standard of care by discharging Atkinson.
Atkinson, relying upon Jenkins v. Payne, 251 Va. 122, 465 S.E.2d 795 (1996), argues that the trial court erred by permitting Dr. Scheer to introduce evidence at trial that Dr. Wampler-Adams was negligent in her care and treatment of Atkinson. Dr. Scheer responds that the trial court properly admitted this testimony in evidence because Dr. Wampler-Adams’ conduct was negligent and such conduct was a superseding intervening cause of Atkinson’s injury. We disagree with Dr. Scheer.
In Jenkins, we considered “whether the trial court erred in excluding from the jury’s consideration (1) opinion evidence that another physician, who had settled the plaintiff’s claim against him, was negligent in his treatment of the decedent, and (2) the defendants’ argument that the settling physician was the sole proximate cause of the decedent’s death.” Jenkins, 251 Va. at 124, 465 S.E.2d at 796.
Veronica L. Payne filed a motion for judgment against Harold S. Jenkins, M.D., Jill W. York, R.N., P.N.P., Barry S. Rothman, M.D., and Doctors Rothman, Grapin, and McKnight, PC. Payne alleged that these health care providers breached the applicable standards of care owed to her. Payne died before trial, and her husband, Troy R. Payne, the personal representative of her estate, was substituted as plaintiff, and the motion for judgment was amended to allege a cause of action for wrongful death.
*453 Veronica Payne had Paget’s Disease, which is a cancer of the nipple and milk ducts. While this cancer remains non-invasive, it grows slowly and is highly curable. There is about a 90% survival rate for patients with Paget’s Disease who receive treatment before the cancer becomes invasive.
Veronica Payne first sought treatment for her breast abnormalities when she was examined by York, a nurse practitioner working under the supervision of Dr. Jenkins. She was seen and treated twice by York, who referred her to a dermatologist. Subsequently, Payne sought treatment from Dr. Rothman, a gynecologist, who prescribed oral antibiotics and a topical steroid to treat problems she was having with her breast. Id. at 125-26, 465 S.E.2d at 797.
Payne made several additional visits to both York and Dr. Roth-man because she was concerned about sores on her breast which had not healed properly. Subsequently, York examined Payne and discovered the presence of multiple masses in her breast, and Payne was referred to a surgical oncologist, who determined that she had aggressive cancer which had spread to her lymph nodes. An expert witness testified at trial that Payne’s death was the result of a misdiagnosed breast cancer and that she would have had a 10-year survival probability of about 90% had her cancer been diagnosed when it was still non-invasive.
Before trial, the personal representative of Payne’s estate settled his claim against Dr. Rothman and his professional corporation. The plaintiff made a motion in limine requesting that the trial court exclude any opinion evidence that Dr. Rothman was negligent in his treatment of Veronica Payne. The defendants objected, asserting that their defense would be based on a theory that Dr. Rothman’s negligence was the sole proximate cause of Veronica Payne’s death. The trial court ultimately granted the motion, ruling that Dr. Rothman’s conduct was “at the very best . . . concurrent negligence as opposed to [superseding negligence].” Id. at 124, 465 S.E.2d at 796.
On appeal, the defendants in Jenkins argued that the trial court erred in refusing to permit them to present testimony that Dr. Rothman breached the standard of care owed to Payne because there was evidence that Dr. Rothman was the sole proximate cause of Veronica Payne’s death. Rejecting their contentions, we stated the following principles which are equally pertinent here.
“Issues of negligence and proximate causation ordinarily are questions of fact for the jury’s determination. Brown v. Koulizakis, 229 Va. 524, 531, 331 S.E.2d 440, 445 (1985). A court *454 decides these issues only when reasonable persons could not differ. Hadeed v. Medic-24, Ltd., 237 Va. 277, 285, 377 S.E.2d 589, 593 (1989).
“ ‘The proximate cause of an event is that act or omission which, in natural and continuing sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred.’ Beale v. Jones, 210 Va. 519, 522, 171 S.E.2d 851, 853 (1970). There may be more than one proximate cause of an event. Panousos v. Allen, 245 Va. 60, 65, 425 S.E.2d 496, 499 (1993).
“In order to relieve a defendant of liability for his negligent act, the negligence intervening between the defendant’s negligent act and the injury must so entirely supersede the operation of the defendant’s negligence that it alone, without any contributing negligence by the defendant in the slightest degree, causes the injury. Id.; Coleman v. Blankenship Oil Corp., 221 Va. 124, 131, 267 S.E.2d 143, 147 (1980); City of Richmond v. Gay, 103 Va. 320, 324, 49 S.E. 482, 483 (1905). Thus, a superseding cause of an injury ‘constitutes a new effective cause and operates independently of any other act, making it and it only the proximate cause of injury.’ Maroulis v. Elliott, 207 Va. 503, 511, 151 S.E.2d 339, 345 (1966).” (Emphasis added). Jenkins, 251 Va. at 128-29, 465 S.E.2d at 799.
We applied these principles in Jenkins, and we held that reasonable persons could not conclude from the evidence that Dr. Rothman’s negligence alone, without any contributing negligence by the defendants in the slightest degree, caused Payne’s death.
We also note that we stated in Richmond v. Gay, 103 Va. 320, 324, 49 S.E. 482, 483 (1905):
“To be a superseding cause, whether intelligent or not, it must so entirely supersede the operation of the defendant’s negligence, that it alone, without the defendant’s contributing negligence thereto in the slightest degree, produces the injury.” Accord Panousos v. Allen, 245 Va. 60, 64-65, 425 S.E.2d 496, 499 (1993); Philip Morris, Inc. v. Emerson, 235 Va. 380, 397, 368 S.E.2d 268, 277 (1988); Cox v. Mabe, 214 Va. 705, 708, 204 S.E.2d 253, 256 (1974); Savage Truck Line v. Traylor, 193 *455 Va. 579, 585-86, 69 S.E.2d 478, 482 (1952); Jefferson Hospital, Inc. v. Van Lear, 186 Va. 74, 81, 41 S.E.2d 441, 444 (1947).
Applying the principles that we enunciated in Jenkins and Gay, we hold, as a matter of law, that Dr. Wampler-Adams’ conduct was not a superseding intervening cause of Atkinson’s injury and, thus, the trial court erred by permitting Dr. Scheer to elicit testimony of Dr. Wampler-Adams’ negligence. Dr. Scheer sought to relieve himself of liability for his purported negligent acts because of a claimed superseding intervening cause. Therefore, he was required to prove that Dr. Wampler-Adams’ failure to admit Atkinson to the hospital entirely superseded the operation of Dr. Scheer’s own alleged negligence so that Dr. Wampler-Adams’ negligence alone, without any contributing negligence, even in the slightest degree by Dr. Scheer, caused Atkinson’s injuries. Dr. Scheer failed to meet this burden.
The uncontradicted evidence of record demonstrates that Dr. Scheer’s alleged negligence contributed at least “in the slightest degree” to Atkinson’s death because Dr. Wampler-Adams testified without contradiction that she relied upon Dr. Scheer’s “workup” when she made the decision to discharge Atkinson. Even though Dr. Wampler-Adams, just as Dr. Rothman in Jenkins, had the last opportunity to take acts which would have substantially increased the patient’s probability of survival, Dr. Wampler-Adams’ failure to act did not entirely sever the chain of proximate causation set in motion by Dr. Scheer’s alleged negligence.
Finding no merit in Dr. Scheer’s remaining arguments, we will reverse the judgment of the trial court and remand this case for a new trial.

Reversed and remanded.