COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys,[*] Huff and Athey
Argued at Virginia Beach, Virginia


KIMBERLY PRICE BURCH,
 ADMINISTRATOR OF THE ESTATE
 OF JOAN SHEETS ISON, DECEASED

                                                        MEMORANDUM OPINION[**] BY
v.        Record No. 0194-23-1                          JUDGE ROBERT J. HUMPHREYS
                                                        MARCH 19, 2024
JEFF SENSENIG, D.O., ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Tyneka L.D. Flythe, Judge

Lee Livingston (Anthony T. Greene; Livingston Law Group PLLC,
on briefs), for appellant.

Elaine D. McCafferty (Donna L. Foster; Woods Rogers Vandeventer
Black PLC, on brief), for appellee.


This appeal arises out of a defense verdict in a medical malpractice case. Kimberly Burch, the administrator of the estate of Joan Ison, sued Dr. Jeff Sensenig and other medical professionals for failing to diagnose Ison with a symptomatic aortic aneurysm that ruptured and caused her death. On appeal, Burch argues that the circuit court erred in refusing her "empty chair" jury instruction, in giving two "mere happening" instructions, in precluding her from cross-examining a defense expert on certain topics, and in excluding certain statistical evidence.

---

[*] Judge Humphreys prepared and the Court adopted the opinion in this case prior to the effective date of his retirement on December 31, 2023.

[**] This opinion is not designated for publication. See Code § 17.1-413(A).

BACKGROUND

On June 10, 2016, Joan Ison went to her primary care physician (PCP) complaining of chest pain. Ison had a known aortic aneurysm and x-rays obtained on the order of her PCP indicated that her aneurysm may have changed. Accordingly, Ison went to the emergency room for more detailed testing. At the ER, Ison presented with severe—10 out of 10—chest pain and mid-back pain. The ER doctor treating Ison was Dr. Jeff Sensenig, who reviewed her medical history, performed a physical exam, and ordered blood work and a CT scan. The CT scan—interpreted by another doctor, a radiologist—revealed that the aneurysm was not "significantly changed" when compared to a CT scan conducted the previous year. Sensenig called the vascular practice treating Ison and spoke with the "on-call" doctor to relay the details of the new CT scan. The on-call doctor recommended that Ison follow-up with her treating vascular physician the next week but did not believe that the aneurysm was causing Ison's symptoms. Sensenig accordingly discharged Ison from the ER and told her to return if her symptoms worsened.

Eight days later, Ison returned to the ER complaining again of severe chest and back pain. Ison reported that the pain level was the same as the last visit. Sensenig again ordered a CT scan—though this specific scan was different from the previous CT scan in its diagnostic value for aneurysms. A second radiologist reviewed this CT scan and concluded that there was no change in Ison's aneurysm from June 10. Sensenig did not call Ison's vascular practice on this occasion. Sensenig reviewed Ison's chart which revealed that her vascular surgeon had canceled the follow-up appointment after Ison's first ER visit. Sensenig decided to admit Ison to the hospital. The hospitalist on call then became Ison's treating physician until the next morning when another hospitalist took over Ison's care. Prior to transferring Ison's care to the hospitalist, Sensenig discussed Ison's visit and her previous medical history, including the fact that Sensenig called Ison's vascular practice on the 10th. On June 20, a CT scan was ordered that revealed that Ison's

aneurysm had ruptured or was leaking. Because the hospital where Sensenig worked and where Ison was admitted did not have the capacity to perform an aneurysm repair surgery, the hospitalists sought to transfer Ison to another hospital, but she died before the transfer could be made.

Burch, as the administrator of Ison's estate, filed a complaint against all of the doctors involved in Ison's care; however, she settled or non-suited the cases against all of the doctor-defendants except for Sensenig. Pretrial, Burch designated around a dozen statistical studies that she sought to introduce into evidence on the survivability of aneurysm repair surgery. At a pretrial motion *in limine*, Sensenig moved to exclude the introduction of the raw statistical data from these studies. The circuit court granted this motion.

Additionally, Dr. Lavingia, defendant's causation expert, testified at trial that Ison was a high-risk candidate for repair surgery and that it was his opinion, held to a fair degree of medical probability, that she would have suffered a complication from the surgery. Dr. Lavingia also opined that Ison would not have had the surgery even if Sensenig had consulted with a vascular surgeon. Burch objected to this testimony on the grounds that it was speculative. The circuit court overruled this objection.

On cross-examination of Dr. Lavingia, Burch sought to ask him whether he would have wanted to know the level of pain the patient was in and whether Ison's symptoms indicated a symptomatic aneurysm. Sensenig objected as the questions were outside the scope of direct examination, and the circuit court agreed and sustained the objection. Burch never proffered what she anticipated Dr. Lavingia's answers to these questions would be.

At the close of the evidence, the circuit court ruled on the parties' proposed jury instructions. Over Burch's objection, the circuit court refused to give a so-called "empty chair" instruction that read, "You may not consider whether another doctor or person was negligent or contributed to Joan Ison's injuries and death." Burch also objected to the circuit court's decision to give two "mere

happening" instructions. Instruction 18 instructed the jury that "The fact that Joan Sheets Ison died does not, of itself, entitle the plaintiff to recover." Instruction 19 instructed the jury that "The fact that a doctor's efforts on behalf of his or her patient were unsuccessful does not, by itself, establish negligence."

The jury returned a defense verdict, and Burch now appeals, assigning error to the circuit court's rulings on the jury instructions, the direct and cross-examination of Dr. Lavingia, and the motion *in limine* regarding statistical evidence.

ANALYSIS

I. The Jury Instructions

Burch assigns error to the circuit court's decisions to deny her proposed "empty chair" instruction and to grant Instructions 18 and 19, the so called "mere happening" instructions.

"The purpose of any jury instruction is to inform the jury of the law guiding their deliberations and verdict." *Keen v. Commonwealth*, 24 Va. App. 795, 807 (1997). Whether to give or deny jury instructions "rest[s] in the sound discretion of the trial court." *Hilton v. Commonwealth*, 293 Va. 293, 302 (2017) (alteration in original). On appeal, "[a] reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Chapman v. Commonwealth*, 56 Va. App. 725, 735 (2010) (quoting *Chibikom v. Commonwealth*, 54 Va. App. 422, 425 (2009)). The Court, therefore, reviews de novo "whether a jury instruction accurately states the relevant law." *Lawlor v. Commonwealth*, 285 Va. 187, 228 (2013) (quoting *Orthopedic & Sports Physical Therapy Assocs., Inc. v. Summit Grp. Props., LLC*, 283 Va. 777, 782 (2012)). Further, "[w]hen considering whether a trial court abused its discretion by denying a [party]'s proffered instruction, 'we view the facts relevant to the determination of that issue in the light most favorable to [that party].'" *Holloman v. Commonwealth*, 65 Va. App. 147, 174 (2015) (quoting *Commonwealth v.*

- 4 -

*Cary*, 271 Va. 87, 91 (2006)). However, "[w]hen granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." *Stockton v. Commonwealth*, 227 Va. 124, 145 (1984).

Burch first argues that the circuit court erred by refusing her "empty chair" instruction. Burch's proposed instruction instructed the jury that "You may not consider whether another doctor or person was negligent or contributed to Joan Ison's injuries and death." Burch cited *Atkinson v. Scheer*, 256 Va. 448 (1998), as her support for her proposed jury instruction. In *Atkinson*, the Supreme Court held that the negligence of a non-party physician does not absolve a party physician unless the non-party's negligence was a "superseding intervening cause." *Id.* at 455 ("[The non-party's] failure to act did not entirely sever the chain of proximate causation set in motion by [the party's] alleged negligence."). In restating the plaintiff's burden, the *Atkinson* Court noted that the plaintiff was entitled to recover if they proved that the party-defendant's negligence, "even in the slightest degree . . . , caused [the plaintiff's] injuries." *Id.* The legal principle at issue covered by Burch's proposed instruction is therefore causation.

In this case, the jury was fully and fairly instructed on the issue of causation. Instruction 10 instructed the jury to answer "if the defendant was negligent, was his negligence *a* proximate cause" of Ison's death. (Emphasis added). Instruction 11 instructed the jury to find for Burch if she proved that "Dr. Sensenig's negligence was *a* proximate cause of Joan Ison's death." (Emphasis added). Instruction 15 informed the jury that "There may be more than one proximate cause of death. If the negligence of a defendant proximately caused the death of Joan Ison, the negligence of the defendant is a proximate cause of Joan Ison's death even if there were other acts or omissions that caused Joan Ison's death." The jury was fully and fairly informed of the relevant legal principle of causation, and the circuit court was not required as a matter of law to provide an additional instruction that was cumulative of the instructions already given.

Burch also appeals the circuit court's decision to give two "mere happening" instructions to the jury. Specifically, Burch objected to Instructions 18 and 19 which read, respectively: "The fact that Joan Sheets Ison died does not, of itself, entitle the plaintiff to recover[,]" and "The fact that a doctor's efforts on behalf of his or her patient were unsuccessful does not, by itself, establish negligence." Burch argues that Instruction 19 was 1) argumentative, 2) unsupported by the law, 3) misleading, and 4) cumulative. On appeal, Burch does not argue that Instruction 18 was argumentative, unsupported, or misleading, but simply cumulative.

As a threshold issue, Instructions 18 and 19 are, in the abstract, correct statements of law. Instruction 18 correctly states that injury alone does not entitle the plaintiff to recover; Instruction 19 similarly states that a doctor is not an insurer or guarantor of his or her patient's outcomes. *See Dixon v. Sublett*, 295 Va. 60, 67 (2018) (holding that a physician is not an insurer of diagnosis and treatment). Burch's argument that Instruction 19 is unsupported by law is not compelling.

Where the circuit court has correctly informed the jury on the law, this Court will only reverse where the instruction given "may reasonably be regarded as having a tendency to mislead the jury." *H.W. Miller Trucking Co. v. Flood*, 203 Va. 934, 937 (1962); *see also Flanagan v. Harvey*, 160 Va. 214, 223 (1933) (reversing lower court for giving a 250-word run-on sentence jury instruction that, though correct on its face, did not fully explain the appropriate mens rea requirement for the given case). The Court "will not find error when a jury was instructed correctly as to the law and the surrounding circumstances assure us that the jury was not confused about its obligations." *Castle v. Lester*, 272 Va. 591, 605 (2006).

In this case, the instructions given were not misleading. Burch argues that Instruction 19's use of the word "efforts" meant that the jury could have interpreted the instruction as excusing the physician's negligence so long as the physician put a good-faith effort forward. Burch cites *Teh Len Chu v. Fairfax Emergency Med. Assocs., Ltd.*, 223 Va. 383, 384 (1982),

wherein the Supreme Court reversed a circuit court for instructing the jury that a physician "was not liable for damages resulting from his honest mistake or a bona fide error in judgment." The Supreme Court reversed the circuit court because it is not the physician's good faith that dictates what the applicable standard of care should be. *Id.* at 385. Burch contends that the word "efforts" implies "an honest or excusable mistake." Burch's argument stretches the language of Instruction 19 too far. Unlike the instruction in *Teh Len Chu*, Instruction 19 does not suggest that efforts made by the physician absolve the physician of liability if they deviate from the standard of care; instead, Instruction 19 informs the jury that the lack of a good outcome, standing alone, does not prove negligence.[1]

Finally, the mere fact that a jury instruction is cumulative does not necessarily merit reversal. Though there are many instances of our Court and the Virginia Supreme Court *affirming* circuit courts for *refusing* cumulative instructions, Burch has not pointed to a single instance of a Virginia appellate court *reversing* a circuit court for *giving* a cumulative instruction that is otherwise proper. The reason, of course, is that we presume that the jury follows the instructions as given and any error in giving a correct though cumulative instruction would necessarily be harmless. *See Gilliam v. Immel*, 293 Va. 18, 26 (2017).

Accordingly, because the circuit court has broad discretion in fashioning jury instructions, and because the jury was fully and fairly instructed on the law and no instructions tended to mislead the jury, the circuit court did not err in its rulings on the "empty chair" or "mere happening" instructions.

---

[1] We also find persuasive our Supreme Court's decision in *Chapple-Brooks v. Nguyen*, No. 161812, slip op. at 6 (Va. Dec. 28, 2017) (order), where the Court held that the language of Instruction 19 was not "argumentative and did not have a tendency to mislead or confuse the jury."

## II. Dr. Lavingia's Testimony

Burch also assigns error to the circuit court's rulings permitting Dr. Lavingia to testify to the possibility that Ison would have suffered a complication from a thoracic aortic repair surgery and prohibiting Burch from cross-examining Dr. Lavingia on standard of care questions.

First, Burch argues on appeal that Dr. Lavingia should not have been permitted to testify as to the "possibility" that Ison would have suffered a complication from an aneurysm repair surgery. Burch cites *Fairfax Hospital System, Inc. v. Curtis*, 249 Va. 531 (1995), in support of this argument. In *Curtis*, the Supreme Court prohibited a doctor from testifying that there was "a possibility" that certain non-negligent factors could have contributed to the decedent's death. *Id.* at 536. The Court reasoned that an expert opinion must be given to a reasonable degree of medical probability in order to not be speculative and that the expert in that case could not do so but could only speak to "possibilities." *Id.* In contrast, Dr. Lavingia's testimony in this case was not that the possible risk of complications could have caused Ison's death regardless of whether the surgery took place, but that, to reasonable degree of medical probability, these risks of complications meant that a vascular doctor would not have operated on Ison at all in the first place. This testimony is not speculative, and the circuit court did not err in overruling Burch's objections.

Second, Burch argues that the circuit court erred in foreclosing cross examination of Dr. Lavingia. This assignment of error is waived because Burch failed to proffer what the expected testimony would be.

Burch sought to cross-examine Sensenig's causation expert, Dr. Lavingia, on certain facts that Burch believed would demonstrate that Ison was displaying classic symptoms of a symptomatic aortic aneurysm that would have led to surgery. Specifically, Burch sought to ask the following questions: "Doctor, as a vascular surgeon, . . . if the patient had come in with 10 out of 10 pain as opposed to 4 out of 10 pain, is that a fact that you would want to know about a patient with a known

thoracic aortic aneurysm?"  Second, "Doctor, . . . Would it be your expectation that a vascular surgeon would know that chest or back pain in the presence of an enlarged thoracic aorta is a predictor of aortic rupture?"  When the circuit court sustained Sensenig's scope objection to both questions, Burch did not proffer what the expected answer to the questions would be.  As noted above, a proffer must be made in order for this Court to evaluate whether the circuit court committed prejudicial error.  The record is completely devoid of what Dr. Lavingia's response to these questions would have been.

Because Burch did not proffer what the excluded testimony would have been, this court has no "basis for adjudication" of Burch's assignment of error, and we affirm the ruling of the circuit court.  *Whittaker v. Commonwealth*, 217 Va. 966, 968 (1977).

### III.  Raw Statistical Data

Finally, Burch argues that the circuit court erred in excluding certain "raw statistical evidence."  We review the circuit court's decision to exclude or admit evidence for an abuse of discretion.  "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred."  *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted on reh'g en banc*, 45 Va. App. 811 (2005).

Evidence is relevant if it has "any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence."  Va. R. Evid. 2:402.  Additionally, relevant evidence may be excluded if "the probative value of the evidence is substantially outweighed by . . . its likelihood of confusing or misleading the trier of fact."  Va. R. Evid. 2:403. Raw statistical data, standing alone and without further context, adds minimal probative value and carries a high risk of confusion of, or misuse by, the jury.[2]  The circuit court ruled that it only

_____

[2] As Mark Twain wrote, "There are three kinds of lies: lies, damned lies, and statistics." Mark Twain, *Chapters from My Autobiography* (1906).  Without context, raw statistics can be accurate, though misleading.  For example, the average adult has one testicle.

excluded raw statistical data, not "other statements from an article that also contains raw statistical data," nor "the literature itself." Without any context or connection to the case at hand, statistics add little, if any, probative value. *See Sanitary Grocery Co. v. Steinbrecher*, 183 Va. 495, 499 (1945) (holding that evidence that 1,000 customers per day visited grocery store without injury was inadmissible because it was misleading and not probative). We cannot say that the circuit court's exclusion of the raw statistical data was unreasonable, and we therefore affirm the ruling of the circuit court.

## CONCLUSION

Given the circuit court's broad discretion in fashioning jury instructions, the circuit court did not err in refusing Burch's cumulative empty chair instruction as the legal principle of multiple proximate causes was already detailed by the other instructions. Additionally, the circuit court did not err in granting Sensenig's mere happening instructions as they correctly stated the law, and the jury could not have been misled by the instructions. Furthermore, the circuit court did not err in permitting Dr. Lavingia to testify to the risk of complications as it was not speculative for the inference that, even assuming Sensenig's negligence, the surgery would not have occurred. Burch procedurally defaulted her assignment of error related to the exclusion of certain cross-examination of Dr. Lavingia by failing to include a proffer of what she expected Dr. Lavingia's testimony would be. Finally, the circuit court did not err in excluding "raw statistical data" because such data, standing alone, is of minimal probative value. Accordingly, we affirm the judgment of the circuit court.[3]

*Affirmed.*

---

[3] Because we affirm the circuit court, we do not reach Sensenig's cross-assignment of error relating to the circuit court's jury instruction on Code § 8.01-397.