COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, Malveaux and Raphael
Argued at Richmond, Virginia


STEPHANIE K. BLANCHARD

v.      Record No. 1871-23-2

RICHMOND TRAFFIC CONTROL, INC., ET AL.

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
DECEMBER 3, 2024

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge[1]

Christopher T. Holinger (Adam H. Lotkin; Georgina Montgomery;
Davis Law, PLC; Rutter Mills LLP, on briefs), for appellant.

James L. Hoyle (James H. Revere, III; Christopher J. Flynn;
Kalbaugh, Pfund & Messersmith, P.C., on brief), for appellee
Richmond Traffic Control, Inc.

(Joseph W. Santini; Morris Kletzkin; Friedlander Misler, PLLC, on
brief), for appellee Shirley Contracting Company, LLC.


Stephanie K. Blanchard appeals the circuit court's order granting judgment in favor of

Richmond Traffic Control, Inc. ("RTC") and Shirley Contracting Company, LLC ("Shirley")

following a jury verdict for RTC and Shirley in Blanchard's personal injury suit against them.

Blanchard asserts that the circuit court erred by denying her motion *in limine* to prohibit RTC

and Shirley from "blaming" nonparties for the collision that caused her injuries. Blanchard also

argues that the circuit court erred in giving four jury instructions over her objection and refusing

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge Charles S. Sharp presided over the motion *in limine* hearing. Judge Willis
entered the order reflecting Judge Sharp's decision on the motion *in limine*, oversaw the jury
trial, and entered the final order in this case.

her request for four other jury instructions. Finding no error, we affirm the circuit court's judgment.

## I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the prevailing party at trial," here, RTC and Shirley. *Norfolk S. Ry. Co. v. Sumner*, 297 Va. 35, 37 (2019).

### A. Procedural History

Blanchard filed a personal injury lawsuit against Stephen Kasey, Ricardo Ramirez, and Ramirez's employer, United Transport LLC ("United"), for injuries she suffered in a vehicle collision between Kasey and Ramirez while Blanchard was a passenger in Kasey's vehicle. Blanchard later added RTC and Shirley to the suit, alleging that they negligently created a dangerous temporary on-ramp to Interstate 95 South that proximately caused the collision. RTC and Shirley denied liability and damages, and further averred that Blanchard's injuries and damages were caused by third parties over whom they had no control. Blanchard settled with Kasey, Ramirez, and United before trial, and they were subsequently dismissed from the suit.

Blanchard filed a pretrial motion *in limine* asking the circuit court to bar RTC and Shirley from "blam[ing] Mr. Kasey and possibly Mr. Ramirez for this collision in order to exonerate themselves from liability." Blanchard asserted that "[a] defendant may only point to the actions of third parties as the cause of an incident where the third parties' actions were a superseding cause." At a hearing on the motion, Blanchard proffered that her anticipated expert witnesses would testify that RTC and Shirley breached their duty of care and that Kasey's or Ramirez's negligence was not relevant. RTC and Shirley argued that the evidence would support a finding that Kasey's or Ramirez's negligence was the sole proximate cause of the collision. RTC and Shirley also asserted that even if the evidence established that their actions were negligent,

- 2 -

Kasey's or Ramirez's negligence could be a superseding cause of the collision, and questions of proximate and superseding cause were matters for the jury. The circuit court denied Blanchard's motion, holding that RTC and Shirley were permitted to "argue liability issues subject to relevance and evidentiary sufficiency."

## B. Trial Evidence

Shirley was awarded a contract with the Virginia Department of Transportation (VDOT) to perform road construction at the intersection of Route 630 and Interstate 95 South in Stafford County, Virginia. In 2017, Shirley subcontracted with RTC to assist with traffic control and safety issues.

Before construction began, Interstate 95 South had three lanes of travel and an additional merge lane for traffic entering the highway from Route 630. On the evening of April 1, 2019, and into the following morning, RTC closed the merge lane and the right-most travel lane at Shirley's request, using temporary traffic control devices including barrels and cones. RTC placed a temporary yield sign in the right-most travel lane. The temporary construction zone created a transition area for vehicles merging onto Interstate 95 South.

Around 5:00 a.m. on April 2, 2019, Kasey was driving Blanchard to a medical appointment. Kasey was generally familiar with the on-going construction where Route 630 intersected with Interstate 95 South. As Kasey drove on the entry ramp to merge onto Interstate 95 South from Route 630, he noticed that there were new construction cones, barrels, bright lights, and equipment on the ramp. The bright lights "confused" and disoriented him. When he reached the end of the ramp, he "had to merge immediately" onto Interstate 95 South due to the temporary construction, while traveling about 45 miles per hour. Kasey saw no traffic in the two oncoming traffic lanes, and he did not see a yield sign. Two or three seconds after he merged, he saw vehicle lights in his rearview mirror move from the left-most lane into his lane. A truck then struck Kasey's vehicle

- 3 -

from behind, pushing it into other construction equipment. Both Kasey and Blanchard went to the hospital for injuries sustained in the collision.

Richard Balgowan testified for Blanchard as an expert witness in highway safety maintenance and traffic control. He opined that the temporary merge area did not comply with Virginia or federal standards. He testified that the temporary construction made drivers unable to merge safely onto Interstate 95 South from Route 630 and that "the best option would have been to close the ramp entirely and detour traffic." He stated that the yield sign was in an improper location and placed too low to the ground, so that it "did not provide adequate advance notice" of the merge. Balgowan opined further that the temporary merge area was too short to allow merging vehicles to properly accelerate to the speed limit of 65 miles per hour.

Blanchard also called Daniel Stewart, who worked for another Shirley subcontractor. Stewart worked at the construction zone on the evening of the collision; he testified there were "lights everywhere" that were bright enough to "light up a whole schoolyard."

Juan Morales testified for RTC and Shirley as an expert in civil engineering and temporary traffic control and safety. He opined that the temporary transition lane complied with relevant standards for work area protection and temporary traffic control and that there was no evidence that the lane's length was inadequate.

An employee for Dewberry Engineers, Shirley's quality control subcontractor, also reviewed the temporary construction on the night of the collision and wrote a work safety checklist indicating that the traffic control devices were "adequate." He opined that the construction zone satisfied Virginia standards. He noted that in addition to RTC's signage and barriers, VDOT had a portable message warning drivers of changed traffic patterns before the merge. A Shirley safety manager, who viewed the temporary construction before the collision,

testified that he would have spoken with the superintendent if he had observed something that "didn't look like it was set up correctly."

## C. Jury Instructions

Blanchard offered an instruction derived from 1 Virginia Model Jury Instructions—Civil, No. 4.018: "Richmond Traffic Control and Shirley Contracting Company, LLC are not required to have anticipated or foreseen the precise injuries that occurred, but it is sufficient that a reasonably prudent highway contractor would have anticipated or foreseen that some injury might probably result from the negligent act." The circuit court denied this instruction over Blanchard's objection, opining that it was not applicable because it focused on the foreseeability of the specific accident that occurred as opposed to "injury and damages" generally.

Blanchard also offered Special Instructions 4, 5, and 8. Instruction 4 stated that public highway road contractors who create or contribute to dangerous conditions are liable for their negligence "when it proximately causes an event or collision," while Instruction 5 highlighted a contractor's "duty to the traveling public" to mark the roadway "so as not to be dangerous for ordinary use under the circumstances." Instruction 8 defined proximate, intervening, and superseding cause, and distinguished between intervening and superseding cause. The circuit court denied Instructions 4, 5, and 8 over Blanchard's objections, noting that they were duplicative.[2]

---

[2] In its given instructions, the circuit court defined negligence as "the failure to use ordinary care," which is "the care a reasonable person would have used under the circumstances of this case." The circuit court also instructed that "[a] contractor doing road construction has a common law duty to act as a reasonable and prudent contractor in providing for the safety of the traveling public." The circuit court defined the proximate cause of an accident as "a cause that, in natural and continuous sequence, produces the accident. It is a cause without which the accident would not have occurred." The jury was further instructed that there can be more than one proximate cause of an injury and that each defendant who proximately causes an injury is liable for that injury. The circuit court defined superseding cause as "an independent event, not reasonably foreseeable, that completely breaks the connection between the defendant's negligent act and the plaintiff's injury. A superseding cause breaks the chain of events so that the

RTC and Shirley also offered jury instructions. Relevant here, Instructions 20, 21, 22, and 23 noted that a driver has a duty "to keep a proper lookout," which means he must "use ordinary care to look in all directions for vehicles and conditions that would affect his driving, to see what a reasonable person would have seen, and to react as a reasonable person would have acted to avoid a collision." They also stated that a driver has "a duty to drive as nearly as practicable within a single lane and not to move from that lane" unless he has used ordinary care to see that it is safe to do so. They further described a driver's duty to yield both when required by signage and "to the driver of any lawfully approaching vehicle." The circuit court gave Instructions 20, 21, 22, and 23 over Blanchard's objections.

## D. Jury Verdict

Blanchard argued in closing that RTC and Shirley negligently created a dangerous on-ramp that proximately caused her injuries. RTC and Shirley asserted that the evidence did not establish that they breached a duty of care, but that Kasey's or Ramirez's negligence solely caused the collision. The jury returned a verdict in favor of RTC and Shirley, and the circuit court ordered that judgment be entered in their favor. This appeal followed.

## II. ANALYSIS

On appeal, Blanchard argues that the circuit court erred in permitting RTC and Shirley to "blame" Kasey or Ramirez for the collision. She also challenges the circuit court's decisions to grant Jury Instructions 20, 21, 22, and 23, and to deny Special Instructions 4, 5, and 8 as well as Model Jury Instruction 4.018.

---

defendants' original negligent act is not a proximate cause of the plaintiff's injury in the slightest degree."

A. Causation

"Appellate courts review a circuit court's ruling on the admissibility of evidence under an abuse of discretion standard." *Davenport v. Util. Trailer Mfg. Co.*, 74 Va. App. 181, 206 (2022). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

"Issues of negligence and proximate causation ordinarily are questions of fact for the jury's determination. A court decides these issues only when reasonable persons could not differ." *Dorman v. State Indus.*, 292 Va. 111, 122 (2016) (quoting *Atkinson v. Scheer*, 256 Va. 448, 453-54 (1998)). "The proximate cause of an event is that act or omission which, in natural and continuing sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Id.* (quoting *Kellermann v. McDonough*, 278 Va. 478, 493 (2009)). "There may be more than one proximate cause of an event." *Jenkins v. Payne*, 251 Va. 122, 128 (1996).

But "a defendant may be negligent and still not be liable for the resulting injury . . . when there is a sufficient intervening act." *Dorman*, 292 Va. at 123. "[E]ven if the primary actor is the 'but for' cause of an injury, an action that is so highly extraordinary as to be unforeseeable may serve to cut off legal causation." *Id.* at 122. This superseding cause "constitutes a new effective cause and operates independently of any other act, making it and it only the proximate cause of injury." *Id.* at 123 (quoting *Atkinson*, 256 Va. at 454). But a superseding cause defense does not apply if the events were "put into operation by the defendant's wrongful act or omission." *Id.*

"The analysis of a superseding cause is distinct from that of joint and several liability. This is the distinction drawn in Virginia law in not allowing the 'empty chair defense.'" *Id.* at

122 n.3.  "Without question the law is that a litigant 'can not [sic] be exonerated by urging and showing the negligence' of other parties or nonparties.'"  *Id.* (quoting *Von Roy v. Whitescarver*, 197 Va. 384, 393 (1955)).  But this rule applies when "other causes concurred in producing, or contributed to the result."  *Id.* (quoting *Carolina, Clinchfield & Ohio Ry. Co. v. Hill*, 119 Va. 416, 421 (1916)).  "Superseding cause, however, is different because 'a superseding cause of an injury constitutes a new effective cause and operates independently of any other act, making it and it only the proximate cause of injury.'"  *Id.* (quoting *Kellermann*, 278 Va. at 493-94).

Blanchard argues that evidence of nonparty negligence was "irrelevant unless there might be a superseding cause."  That argument presumes that the evidence would establish that RTC and Shirley were negligent as a matter of law.  RTC and Shirley disputed their negligence, and they were entitled to introduce evidence that another's negligence was the sole proximate or superseding cause of Blanchard's injuries.  *Dorman*, 292 Va. at 124 (trial court did not err in admitting evidence of superseding causation because the defendant "was entitled to present a defense and because there was evidence from which the jury could have found that [the defendant]'s negligence, if it existed, was superseded").  RTC and Shirley argued that evidence of third-party negligence would support a finding that Kasey's or Ramirez's negligence was the sole proximate or superseding cause of the collision.  With that disputed factual issue unresolved, the circuit court did not abuse its discretion by permitting RTC and Shirley to introduce evidence supporting their defense.  *See Gamache v. Allen*, 268 Va. 222, 228 (2004) (noting that defendants are "entitled to present evidence that other significant events . . . for which defendants were not responsible were the proximate cause of" an event); *cf. Jenkins*, 251 Va. at 129 ("[S]ince the defendants produced no evidence tending to prove the facts on which their theory of sole proximate causation rested, they were not entitled to place that issue before the jury and have the jury instructed on it.").

Blanchard relies on *Jenkins* to support her position, but that case is inapplicable here because it involves "at the very best . . . concurrent negligence as opposed to [superseding]." *Id.* at 124 (alterations in original). In that case, Payne sued multiple doctors who treated her during the same time period. *Id.* at 125-27. After settling with one of the doctors, Dr. Rothman, Payne's representative moved *in limine* to exclude any opinion evidence that Dr. Rothman provided negligent treatment, and the circuit court granted the motion. *Id.* at 124. Because the trial produced "no evidence that Dr. Rothman's conduct was the sole proximate cause of Payne's death," our Supreme Court agreed with Payne that "as a matter of law, Dr. Rothman's treatment of Payne could not be a superseding cause of Payne's death because Dr. Rothman's treatment was rendered during the period that [the other doctors] also were treating Payne." *Id.* at 128. Accordingly, the Court held that opinion evidence that Dr. Rothman was negligent was "irrelevant to the issue whether the defendants also were negligent in their treatment of Payne," and was properly excluded. *Id.* at 129.

In contrast to *Jenkins*, here the evidence shows no concurrent action, but rather a clear sequence of events. First, RTC and Shirley set up the construction zone which, according to multiple individuals who reviewed it, complied with relevant standards of care. Then, at a later point in time, Kasey drove through it. Passing a portable message warning of the changed traffic pattern and a yield sign, Kasey "merge[d] immediately" even though he was "confused" and disoriented by the surrounding bright lights. Finally, Ramirez, driving past the construction zone, struck Kasey's vehicle from behind. These successive events are very unlike those in *Jenkins*, where any one or multiple of the treating doctors could have provided negligent treatment at the same time. Reasonable persons could conclude, based on Kasey's testimony, that Kasey and/or Ramirez—without any contributing negligence by RTC and Shirley—caused the collision. *Cf. Jenkins*, 251 Va. at 129. RTC and Shirley were entitled to put on evidence

showing that Kasey's or Ramirez's actions in or around the construction zone superseded any of their own negligence that occurred earlier, while they were setting it up. *See Dorman*, 292 Va. at 124. And even in *Jenkins*, the circuit court excluded only "opinion testimony that Dr. Rothman was negligent," and "did not preclude the defendants from introducing into evidence the facts surrounding Dr. Rothman's treatment of Payne." 251 Va. at 124 n.1. So even if RTC and Shirley's theory of their defense was that Kasey and/or Ramirez were concurrently negligent, evidence of those dismissed parties' actions is still admissible under *Jenkins*. Thus, *Jenkins* does not support Blanchard's position, and we conclude instead that the circuit court did not err in admitting the evidence of nonparty negligence.

## B. Jury Instructions

When reviewing the content of jury instructions on appeal, our "sole responsibility . . . is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Hancock-Underwood v. Knight*, 277 Va. 127, 131 (2009) (quoting *Molina v. Commonwealth*, 272 Va. 666, 671 (2006)). "The determination whether a jury instruction accurately states the relevant law is a question of law that we review de novo." *Hawthorne v. VanMarter*, 279 Va. 566, 586 (2010). "[I]n deciding whether a particular instruction is appropriate, we view the facts in the light most favorable to the proponent of the instruction." *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009).

### 1. Rejected Instructions

Blanchard's instruction derived from Model Jury Instruction No. 4.018 deals with the foreseeability of injury from a highway contractor's negligent act. A jury instruction on foreseeable consequences "is appropriate where a defendant has breached a duty owed to a plaintiff resulting in an unanticipated injury." *Blondel v. Hays*, 241 Va. 467, 475 (1991). Here, the issue at trial was not the foreseeability of Blanchard's injuries, but rather whose negligence

caused the collision. Under these circumstances, the circuit court did not abuse its discretion in denying this instruction.

Blanchard's Special Instructions 4, 5, and 8 merely restate the legal principles set forth in the circuit court's given instructions, but using relevant nouns such as "contractors" and "lane closures" where the given instructions use more general terms such as "defendants" and "ordinary care." Where there are other instructions covering the same principles, such instructions "inappropriately 'single out for emphasis a part of the evidence tending to establish a particular fact,' and 'would be confusing or misleading to the jury.'" *Holmes v. Commonwealth*, 76 Va. App. 34, 54 (2022) (citations omitted). For that reason, "we will approve a trial court's decision not to give an instruction that is duplicative of instructions already given." *Honsinger v. Egan*, 266 Va. 269, 274 (2003). What is more, Special Instruction 8 distinguishes between superseding and intervening cause, but RTC and Shirley's theory of their defense was superseding cause only. Adding the definition of "intervening cause" to the already large quantity of legal concepts the jury was required to absorb, where no party had raised the issue of intervening cause, would have run the risk of confusing the jury. Jury instructions that are "confusing and subject to misunderstanding" should not be given. *Gaalaas v. Morrison*, 233 Va. 148, 157 (1987). The circuit court did not abuse its discretion by denying these duplicative instructions.[3]

---

[3] We further note that Special Instruction 8 contains language quoted directly from *Kellermann*, but our Supreme Court has "discourage[d] the 'indiscriminate use of language from appellate opinions in a jury instruction,'" because the statements therein, "while authority for the propositions set forth, are not necessarily proper language for jury instructions." *Mason v. Commonwealth*, 49 Va. App. 39, 49 (2006) (citations omitted) (quoting *Seaton v. Commonwealth*, 42 Va. App. 739, 754 (2004)).

2. Granted Instructions

Blanchard concedes that given Instructions 20, 21, 22, and 23 are accurate statements of law, but she argues they "neither fully nor fairly explain the law of the case."

"We read the granted jury instructions together and consider them as a whole." *Hawthorne*, 279 Va. at 586. Here, granted Instructions 20, 21, 22, and 23 describe a driver's duties. The driver's duty is relevant to RTC and Shirley's theory of their defense: even if they were negligent, the negligence of drivers Kasey and/or Ramirez superseded their own. To establish that Kasey and/or Ramirez were negligent, RTC and Shirley would have to show that the drivers breached a duty. More than a scintilla of evidence supports their theory. *See Hancock-Underwood*, 277 Va. at 131 ("The evidence introduced in support of a requested instruction 'must amount to more than a scintilla.'" (quoting *Schlimmer v. Poverty Hunt Club*, 268 Va. 74, 78 (2004))).

Kasey testified that before he entered Interstate 95, he saw no vehicles. But there were "lights everywhere" that were bright enough to illuminate a large area, and Kasey testified he was "confused" and disoriented because the lights were so bright. Although Kasey claimed he did not see it, other evidence showed that the merge was controlled by a yield sign. Kasey "merge[d] immediately" onto the interstate despite his confusion and relatively slow speed. Two or three seconds later, lights moved from his left to behind his vehicle and he was struck by an oncoming truck. This evidence is sufficient to support a jury's reasonable inference that Kasey did not keep a proper lookout for oncoming vehicles or road signage, did not properly yield at the merge, and/or the truck did not properly maintain its lane of travel. For that reason, the jury instructions describing Kasey's and Ramirez's duties as drivers were both relevant and appropriate. RTC and Shirley were permitted to argue that Kasey's or Ramirez's negligence was a sole proximate cause or superseding cause of the collision. These instructions clearly stated the

law and covered all issues the evidence fairly raised.  Thus, the circuit court did not abuse its

discretion by giving these instructions.

## III.  CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.[4]

*Affirmed.*

---

[4] Because we find Blanchard's assignments of error dispositive, we do not reach RTC's and Shirley's assignments of cross-error.  *Webb v. Virginian-Pilot Media Co., LLC*, 287 Va. 84, 88 (2014) (noting that the Court would address only the "dispositive" issue among the various assignments of error and cross-error); *see Rastek Constr. & Dev. Corp. v. Gen. Land Commer. Co., LLC*, 294 Va. 416, 423 (2017) (noting that only one assignment of error was dispositive, and declining to address others because "the doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).