COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Ortiz and Chaney

MARSHALL TRAVIS WOOTTEN

MEMORANDUM OPINION*

v.      Record No. 1146-24-2                    PER CURIAM
                                               JANUARY 13, 2026

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HANOVER COUNTY
Patricia Kelly, Judge

(David George Parker, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Robert D. Bauer, Assistant
Attorney General, on brief), for appellee.


A jury convicted Marshall Travis Wootten of aggravated malicious wounding in violation

of Code § 18.2-51.2(A) and use of a firearm in the commission of aggravated malicious

wounding in violation of Code § 18.2-53.1. The jury acquitted him of attempted second-degree

murder. On appeal, Wootten argues that the trial court erred in denying his motion to strike all

three charges and in denying his proposed jury instruction defining self-defense with no duty to

retreat.[1]

---

\* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the dispositive issue or issues have been authoritatively
decided, and the appellant has not argued that the case law should be overturned, extended,
modified, or reversed." *See* Code § 17.1 403(ii)(b); Rule 5A:27(b).

## I. BACKGROUND[2]

On May 8, 2022, Wootten shot his cousin, William Wood. It was Mother's Day, and Wood wanted to visit Susan Samuel,[3] Wootten's mother and Wood's aunt, with whom Wood was close. Wood went to Samuel's home to see her and to pick up some belongings that he had stored in a camper in the backyard, where he used to live. When he arrived at Samuel's home, he went straight to the camper. Wootten, who was also at Samuel's house that day, came out onto the back porch, and Wood and Wootten began cursing at each other. Wood testified that he had a pistol which was "snapped down" in a holster on his right hip.

After the altercation with Wootten, Wood decided that he would not stay to visit his aunt and that he would leave once he got his belongings. After Wood went into the camper, he "could tell some of my stuff had been disturbed." He was "standing in front of a big bay window in the camper putting things in the cardboard box" when he was "shot through the window." Wood was hit in the chest. He stayed on the floor of the camper until he heard Wootten drive away. He identified Wootten as the person who shot him and saw Wootten carrying what appeared to be a shotgun. Wood testified that he never unsnapped his holster or drew his weapon.

---

[2] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences" that can be drawn from the evidence. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)). "This deferential principle applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of all of the evidence'" presented at trial. *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022).

[3] The parties at times referred to Wootten's mother as Susan Wootten. This Court refers to her as she introduced herself at trial.

At trial, almost two years later, Wood testified that he continued to have "a lot of pain," "numbness," and "problems lifting things over my shoulders." He testified that he was not under the influence of any drugs on the day he was shot.

Investigator Krystal Laine of the Hanover County Sheriff's Office spoke to Wood at the hospital after he was shot. She recalled Wood saying that he did not have a firearm on his person during the incident.

Investigator Steve Tomlinson of the Hanover County Sheriff's Office testified that he went to Samuel's home and recovered a spent, red shotgun shell from a wicker chair on Samuel's porch. He searched Wootten's truck and found a 12-gauge shotgun in the toolbox mounted on the back of the truck, and two additional unspent shotgun shells in the shotgun, one in the chamber and one in the tubular magazine. Investigator Tomlinson testified that the wicker chair on the porch was 15 feet from the back door of the house and that the distance "[f]rom the wicker chair to the door of the camper was 95 feet." Investigator Tomlinson also searched Wood's truck pursuant to a search warrant and found a rifle and a "black handgun that I found in the back part of that sleeper cab." The handgun was loaded with six cartridges, none of which had been fired.

Susan Samuel testified that she witnessed Wootten shoot Wood. She had previously texted Wood that he was not welcome at her home because of conflicts he had with other family members and that he was not invited to come by on Mother's Day. When she learned that Wood had come to her home, she went out onto the porch and saw Wood "hollering across the yard" from the camper doorway. She testified that Wood "kept moving and kept changing his position" and that "[o]ne minute he'd have his hand up, then he'd turn sideways." Samuel could not hear what Wood was saying clearly. She tried to quell the argument between Wood and Wootten without success. She saw Wootten take the shotgun out of its case, and she told him,

- 3 -

"you need to put that down." She managed to convince Wootten to put the gun down, and Wootten "walked away from it and him and I were talking and he told me, he said Mom, he's going to kill me. I'm scared." Wood continued yelling across the yard and Wootten "picked the gun back up and [Wootten] hollered oh, no, you won't." Samuel was "screaming at [Wood] to shut up and I'm telling [Wootten] to put it down." When Samuel saw the gun "was in his hands, I smacked it" at about the same time he fired. Samuel then saw Wootten get into his truck with the gun and drive away.

Kimberly Dale, Wootten's cousin, saw Wood arrive at Samuel's home. She was on the porch with Wootten and his six-year-old daughter. Dale testified that Wood was "cussing and fussing," and Wootten's daughter started to cry. Wootten took his daughter inside, and Dale told Samuel that Wood had arrived. Dale stayed inside with Wootten's daughter. While she did not witness the gunshot, she heard it from inside the house. Samuel came inside the house, and Samuel told Dale to check on Wood. Dale found Wood "at the door and he said he'd been shot or hit." She then testified that she saw Wood "pointing a gun at the door." She acknowledged that she never told the deputies that Wood was pointing a gun because she "was in shock the day it happened. The officers was actually pretty mean to me, drug me by my collar and stuff, so I really didn't want to tell them much of anything."

Wootten testified in his own defense. He admitted that he shot Wood, but explained that he did so because he was "pretty sure he was going to shoot me." When Wood first arrived, "he was cussing and hollering at someone on the phone." Wootten asked Wood, "what's the matter, Bill?" Wootten testified that Wood "turned, put his hand on his gun and said stay where the fuck you are. If you come off that porch—with his hand on his gun, he said if you come off the porch I'm going to beat you within an inch of your life." Wootten testified that he took his daughter inside, "went straight and grabbed the gun," and went back outside. Wootten testified that

- 4 -

Samuel convinced him to put the gun down. Wootten testified that Wood "had his hand on his weapon" and said "that he wishes I would. He would put me in the dirt." Wootten then picked up the shotgun again. He testified that Wood was standing "in the doorway of the camper" when he removed his weapon from his holster. Wootten testified that "I've got the gun in my hand already because he had already unholstered his weapon." Wootten testified that "things just kind of happened fast." Wootten admitted that he did not call 911 and that when he left, he did not go to either of the nearby police stations.

The trial court ruled that Wootten had established a prima facie claim of self-defense. Outside of the presence of the jury, counsel for Wootten elicited testimony from Wood, which he proffered was relevant to Wood's propensity for violence. The trial judge stated, Wood's "propensity for violence I think is admissible" to show "the reasonableness of it about whether—what [Wootten]'s fearing when he responds." Before the jury, Wootten testified to three earlier occasions where Wood was violent, either drawing a firearm or striking him. Detective Charles Gardner of the Louisa County Sheriff's Office testified about one of those occasions. In 2019, he responded to a report of a self-inflicted gunshot wound. Detective Gardner described Wood as "covered in blood" and "intoxicated and agitated." Detective Gardner testified that Wood was uncooperative with police, so he "deployed a taser that incapacitated him for a few seconds, which gave us enough time to place him in handcuffs so rescue could come in." Wood was then transported to the hospital.

Deputy Brian Sparks, also of the Hanover County Sheriff's Office, testified that on Mother's Day in 2022, he stopped Wood's truck after he drove away from Samuel's home. Deputy Sparks saw that Wood's right arm was "covered in blood" and that Wood was agitated. Deputy Sparks testified that Wood "wanted to drive himself to the hospital. I explained to him that due to his safety and health that I'd prefer him [to] take an ambulance." Deputy Sparks

searched Wood before he got in the ambulance and found "six unspent .357 magnum rounds" in his right pocket. Deputy Sparks agreed that Wood was agitated from being prevented from driving himself to the hospital and from being pushed and prodded when the deputies bandaged his wounds.

Dr. Robyn Amos-Kroohs from the Virginia Department of Forensic Science testified as an expert in forensic toxicology. She reviewed the hospital records of Wood's treatment for his gunshot wounds. She testified that the hospital's urinary drug screen indicated the presence of "amphetamine or a drug structured similar to amphetamine," but that the test could have revealed the presence of drugs taken "anywhere from several hours to several days" prior. No further tests were done to confirm the specific drug. She testified that a positive result could indicate different types of amphetamines, including Phentermine, which is used for weight loss, or Adderall, which is used to treat ADHD.

At the close of the Commonwealth's evidence, counsel for Wootten moved to strike, arguing that the Commonwealth had presented "no evidence of any kind of specific inten[t] to kill." The trial court denied the motion to strike. At the conclusion of all of the evidence, counsel for Wootten moved to strike again, arguing that the "Commonwealth has not provided sufficient evidence of a specific intent for the murder." Addressing the remaining charges of aggravated malicious wounding and use of a firearm in the commission of aggravated malicious wounding, counsel for Wootten argued, "the evidence clearly establishes that there was a heated dispute between Mr. Wood and Mr. Wootten" and that the "heat of passion negates malice." Counsel argued that Wood "perjured himself here in the courtroom, [and was] completely unreliable" and that "as a matter of law his testimony can't be relied upon." The trial court also denied this motion, holding, "it is a factual issue for the jury to decide and we're about to let them decide it."

The parties proposed jury instructions to the trial court. Counsel for Wootten proposed a non-model jury instruction, which advised:

> When one without fault himself is attacked by another in such manner or under such circumstances as to furnish reasonable grounds for apprehending a design to take away his life, or do him some great bodily harm, and there is reasonable ground to believe the danger imminent and that such design will be accomplished, and the person assaulted has reasonable ground to believe and does believe such danger is imminent, he may act upon such appearance and, without retreating, use such force as is necessary against his assailant if he has reasonable ground to believe and does believe that such force is necessary in order to avoid the apparent danger.

The trial judge asked counsel for Wootten if this was a model jury instruction, and counsel responded, "Judge, it's not a model. It's taken from the Virginia Practice Series jury instruction book. Its language comes from" *Adams v. Commonwealth*, 201 Va. 321 (1959). The trial judge asked counsel what *Adams* said, because she "may want to see what the case says before I'm giving a jury instruction on it." Counsel for Wootten then quoted from another case, *Perkins v. Commonwealth*, 186 Va. 867, 874-75 (1947), but the language counsel quoted from *Perkins* differed from the language in the proposed jury instruction so the trial judge rejected the proposed instruction.

The jury found Wootten not guilty of attempted second-degree murder but found Wootten guilty of both aggravated malicious wounding and use of a firearm in the commission of aggravated malicious wounding. Wootten was sentenced to 25 years of incarceration with 16 years suspended.[4] Wootten now appeals to this Court.

---

[4] Wootten was also found guilty of possession of a firearm as a felon. That offense is not before this Court in this appeal.

## II. ANALYSIS

### A. <u>Sufficiency of the Evidence</u>

In his first assignment of error, Wootten argues, "The trial court erred by denying Mr. Wootten's motion to strike at the close of the evidence the charge of attempted murder." In his second assignment of error, he argues, "The trial court erred by denying Mr. Wootten's motion to strike at the close of the evidence the charge of aggravated malicious wounding. The evidence was insufficient to find Mr. Wootten guilty of aggravated malicious wounding." Finally, in his third assignment of error, he argues, "The trial court erred by denying Mr. Wootten's motion to strike at the close of the evidence the charge of use of a firearm during the commission of a felony. The evidence was insufficient to find Mr. Wootten guilty of use of a firearm during the commission of a felony." Wootten argues, "[S]elf-defense was established by Appellant. Consequently, the trial court erred by not striking" the charges.

### 1. *Rule 5A:18*

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Rule 5A:18 requires a litigant to make timely and specific objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Brown v. Commonwealth*, 279 Va. 210, 217 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 337 (2004)). "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (emphases in original) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

"In a jury trial, the defendant preserves his objections to the sufficiency of the evidence . . . in a motion to strike at the conclusion of all the evidence or a motion to set aside the verdict" if he elects to introduce his own evidence. *Commonwealth v. Bass*, 292 Va. 19, 33 (2016) (citing *Murillo-Rodriguez v. Commonwealth*, 279 Va. 64, 84 (2010)). "In addition, '[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for review.'" *Banks v. Commonwealth*, 67 Va. App. 273, 285 (2017) (alteration in original) (quoting *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc)).

After the presentation of all the evidence, Wootten moved to strike the attempted murder charge because the "Commonwealth has not provided sufficient evidence of a specific intent." He also moved to strike the other charges of aggravated malicious wounding and use of a firearm in the commission of aggravated malicious wounding because the "heat of passion negates malice" and "the evidence clearly establishes that there was a heated dispute between Mr. Wood and Mr. Wootten." He argued that Wood's contrary testimony was so "completely unreliable" that "as a matter of law his testimony can't be relied upon." The trial court denied the motion to strike, holding that "it is a factual issue for the jury to decide."

On appeal, Wootten makes a different argument. He now argues that the trial court erred by not granting his motion to strike all three charges on self-defense grounds. However, he did not make this argument below. Nowhere in his motion to strike did he present the argument he now presents on appeal, that "self-defense was established by Appellant." Thus, Rule 5A:18 prevents us from considering his arguments for the first time on appeal.[5]

_____

[5] Wootten asks this Court to consider the good cause and ends of justice exceptions to Rule 5A:18. "The good cause exception is applied when an appellant did not have the opportunity to object to an alleged error during the proceedings below." *Flanagan v. Commonwealth*, 58 Va. App. 681, 694 (2011). Wootten does not argue that he had no opportunity to object, nor does the record support such an argument. In fact, the record affirmatively shows that Wootten had an opportunity to object, given that he moved to strike. We therefore cannot say that the good cause exception applies. The ends of justice exception

## 2. *Mootness*

Wootten argues, "The trial court erred by denying Mr. Wootten's motion to strike at the close of the evidence the charge of attempted murder." After the trial court denied his motion to strike the attempted murder charge, the jury then acquitted Wootten of attempted murder.

"[A] case is moot and must be dismissed when the controversy that existed between litigants has ceased to exist[.]" *Commonwealth v. Browne*, 303 Va. 90, 91 (2024) (alterations in original) (quoting *Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 452 (2013)). "Whenever it appears . . . that there is no actual controversy between the litigants, or that, if it once existed, it has ceased to do so, it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case." *Id.* (alteration in original).

Consistent with those principles, this Court has held that a defendant's challenge to the denial of his motion to strike was mooted after the jury acquitted him of the relevant charges. *Lienau v. Commonwealth*, 69 Va. App. 254, 274 (2018), *aff'd upon rehearing en banc*, 69 Va. App. 780 (2019). As this Court held in *Lienau*, "Because the argument has been effectively rendered moot by the verdict, we reject [appellant's] argument that the trial court erred in denying the motion to strike." *Id.* Therefore, Wootten's first assignment of error is likewise moot in this case to the extent it challenges the trial court's ruling on his motion to strike the attempted murder charge, of which the jury subsequently acquitted him. For all these reasons, we do not disturb the trial court's judgment.

---

"applies only in the extraordinary situation where a miscarriage of justice has occurred." *Moroney v. Majerus*, 82 Va. App. 737, 760 (2024) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 682 (2022)). "In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred." *Id.* (alteration in original) (quoting *Conley*, 74 Va. App. at 683). Wootten has made no such showing that would warrant application of the ends of justice exception.

B.  Jury Instruction

Wootten argues, "The trial court erred by denying Mr. Wootten a jury instruction describing Appellant having no duty to retreat in the face of imminent danger."

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'"  *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)).  "We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion."  *Holmes v. Commonwealth*, 76 Va. App. 34, 53 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022)).  "[W]hether a jury instruction accurately states the relevant law is a question of law that we review de novo."  *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)).

"We read the granted jury instructions together and consider them as a whole."  *Orthopedic & Sports Physical Therapy Assocs. v. Summit Grp. Props., LLC*, 283 Va. 777, 782 (2012) (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 586 (2010)).  "When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle."  *Hilton v. Commonwealth*, 293 Va. 293, 302 (2017) (quoting *Daniels v. Commonwealth*, 275 Va. 460, 466 (2008)).

"[W]hen reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction."  *Dandridge v. Commonwealth*, 72 Va. App. 669, 676 (2021) (quoting *Lienau*, 69 Va. App. at 260).  However, the proponent bears the burden to "satisfy the trial court that the proposed language is a correct statement of the law, applicable to the facts of the case on trial, and expressed in appropriate

- 11 -

language." *Miller v. Commonwealth*, 64 Va. App. 527, 547 (2015) (quoting *Shaikh v. Johnson*, 276 Va. 537, 546 (2008)).

Wootten proposed a non-model jury instruction that he was entitled to defend himself without retreating if he was without fault. He proffered that it came from "the Virginia Practice Series jury instruction book," which cited *Adams v. Commonwealth*, 201 Va. 321 (1959). However, he then read a portion of the instruction approved in *Perkins v. Commonwealth*, 186 Va. 867, 874-75 (1947). The trial court correctly found that the language Wootten read was not the same as the language set forth in Wootten's proposed instruction.[6] Wootten offered no further argument, and the trial court marked his proposed instruction as rejected.

On appeal, Wootten argues that his proposed instruction is supported by the holdings in *Foote v. Commonwealth*, 11 Va. App. 61, 67 (1990), that he need not retreat if he is free from fault—and in *Fortune v. Commonwealth*, 133 Va. 669, 686 (1922), that he had "the same right of conduct, without any retreat," while "in his own curtilage." He also cites a passage from *Bevley v. Commonwealth*, 185 Va. 210, 215 (1946), which does not address the circumstances imposing a duty to retreat. However, he did not make those arguments to the trial court, so they are waived on appeal, and we cannot reach them. Rule 5A:18.

Wootten also asserts that "no other instruction was admitted that addressed Appellant's lack of a duty to retreat, or allowing the jury to determine a lack of such a duty if certain facts were established." However, the trial court gave the following two instructions:

---

[6] We note that this instruction is not found in *Adams*, which affirmed the refusal of a proposed defense instruction on the applicability of self-defense if the defendant had committed adultery, after finding that other instructions "sufficiently explained the law of justifiable and excusable homicide in self-defense." 201 Va. at 325-26. Wootten's proposed jury instruction instead appears to follow the instruction criticized by the Supreme Court in *Hale v. Commonwealth*, 165 Va. 808, 813-14 (1936), for failing accurately to distinguish "justifiable" and "excusable" homicide.

Instruction No. 14

If you believe that the defendant was without fault in provoking or bringing on the fight or difficulty and you further believe that:

(1) The defendant reasonably feared, under the circumstances as they appeared to him, that he was in imminent danger of bodily harm; and

(2) The defendant used no more force, under the circumstances as they appeared to him, than was reasonably necessary to protect himself from the perceived harm,

Then the defendant acted in self-defense, and you shall find the him/her [sic] not guilty.

Instruction No. 15

If you believe that the defendant was to some degree at fault in provoking or bringing on the fight or difficulty, but you further believe that:

(1) The defendant retreated as far as he safely could under the circumstances in a good faith attempt to abandon the fight; and

(2) The defendant made known his desire for peace by word or act; and

(3) The defendant reasonably feared, under the circumstances as they appeared to him, that he was in imminent danger of bodily harm; and

(4) The defendant used no more force, under the circumstances as they appeared to him, than was reasonably necessary to protect himself from the threatened harm,

Then the defendant acted in self-defense, and you shall find him not guilty.

Virginia law recognizes two types of self-defense: justifiable and excusable. *Jones v. Commonwealth*, 71 Va. App. 70, 94 (2019). Both types constitute a complete defense (even to a murder charge or an aggravated malicious wounding charge). *Id.* "Justifiable homicide in

- 13 -

self-defense occurs where a person, without any fault on his part in provoking or bringing on the difficulty, kills another under reasonable apprehension of death or great bodily harm to himself." *Id.* (quoting *Bell v. Commonwealth*, 66 Va. App. 479, 487 (2016)). If, however, the defendant "'is even slightly at fault' in creating the difficulty leading to the necessity to kill, 'the killing is not justifiable.'" *Id.* (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). A defendant who bears fault in provoking the confrontation may prove excusable homicide if he also "retreats as far as possible, announces his desire for peace, and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm." *Id.* at 95 (emphasis omitted) (quoting *Avent v. Commonwealth*, 279 Va. 175, 200 (2010)).

The instructions that were given to the jury in this case accurately stated the law and together established that Wootten had a duty to retreat only if the jury believed that he was not without fault. Wootten identifies no aspect of either justifiable or excusable self-defense on which the jury lacked a proper instruction. The record supports the trial court's holding.

### III. CONCLUSION

For all of the foregoing reasons, we do not disturb the judgment of the trial court.

*Affirmed.*